**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| DEMOCRACY FORWARD FOUNDATION,<br>P.O. Box 34553<br>Washington, D.C. 20043,<br><br>*Plaintiff,*<br><br>vs.<br><br>SOCIAL SECURITY ADMINISTRATION<br>6401 Security Boulevard<br>Baltimore, MD 21235<br><br>*Defendant.* | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Case No. 25-cv- |

## COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff Democracy Forward Foundation ("DFF") brings this action against Defendant Social Security Administration ("SSA") to compel compliance with the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). Plaintiff alleges as follows:

## Jurisdiction and Venue

1.      This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

2.      Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e)(1) because Defendant's headquarters and the agency records at issue are situated in this District.

**Parties**

3.     Plaintiff DFF is a national, not-for-profit organization that works to promote transparency and accountability in government, in part, by educating the public on government actions and policies.

4.     Defendant SSA "is the Nation's primary income security Agency. It administers the Federal retirement, survivors and disability insurance programs, as well as the program of supplemental security income (SSI) for the aged, blind and disabled."[1] SSA is a federal agency within the meaning of FOIA, 5 U.S.C. § 552(f)(1), and is headquartered in this District. SSA is in possession, custody, and control of records, which are located in this jurisdiction and to which Plaintiff seeks access.

**Facts**

5.     Defendant SSA reports that as of July 2025, over 74 million people receive Social Security, SSI, or both.[2]

6.     In commemorating the 90th anniversary of Social Security on August 14, 2025, the Trump Administration acknowledged that "Social Security [is] a lifeline for retired workers, survivors, and people with disabilities and a cornerstone of retirement security across generations."[3]

---

[1] *See* Social Security Admin., *Organizational Structure of the Social Security Administration* (Chapter S), Organizational Manual § S.00 (Mission), https://www.ssa.gov/org/orgOC.htm (last visited Sept. 8, 2025).

[2] *See* Social Security Admin., *Monthly Statistical Snapshot, July 2025* (released Aug. 2025), https://www.ssa.gov/policy/docs/quickfacts/stat_snapshot/.

[3] *See* Social Security Admin., *Social Security Celebrates 90 Years of Service to the American People*, Press Release (Aug. 14, 2025), https://www.ssa.gov/news/en/press/releases/2025-08-14.html.

7.      And yet, on February 27, 2025, SSA announced plans to "implement agency-wide organizational restructuring that [would] include significant workforce reductions."[4]

8.      On March 18, 2025, SSA announced plans to limit certain over-the-phone services purportedly for anti-fraud purposes.[5]

9.      Internal SSA analysis reportedly estimated that proposed changes to phone services would result in increased "foot traffic" to field offices by "approximately 75,000-85,000 additional visitors per week," "longer wait times and processing time," and "disproportionate impact on vulnerable populations," among other predicted impacts and risks.[6]

10.     SSA subsequently announced an effective date of April 14, 2025, for changes to certain over-the-phone services.[7]

11.     By mid-April, nearly 2,000 SSA workers had reportedly left field offices pursuant to "voluntary separation incentive payments."[8]

---

[4] *See Social Security Admin.*, *Social Security Announces Options to its Workforce*, Press Release (Feb. 27, 2025), https://www.ssa.gov/news/en/press/releases/2025-02-27.html.

[5] *See Social Security Admin.*, *Social Security Strengthens Identity Proofing Requirements and Expedites Direct Deposit Changes to One Day*, Social Security Matters (Mar. 18, 2025), https://blog.ssa.gov/social-security-strengthens-identity-proofing-requirements-and-expedites-direct-deposit-changes-to-one-day/.

[6] *See* Judd Legum, *EXCLUSIVE: Memo Details Trump Plan to Sabotage the Social Security Administration*, Popular Info. (Mar. 17, 2025), https://popular.info/p/exclusive-memo-details-trump-plan (posting screenshots of a purported March 13, 2025 memorandum from Acting Deputy Commissioner Doris Diaz to Acting Commissioner Leland Dudek on "Strengthening Identity Assurance for SSA Transactions").

[7] *See* Social Security Admin., *Social Security Updates Recently Announced Identity Proofing Requirements*, Press Release (Mar. 26, 2025), https://www.ssa.gov/news/en/press/releases/2025-03-26.html.

[8] *See* Andy Markowitz, *Nearly 2,000 Social Security Workers Leaving Field Offices*, AARP (Apr. 10, 2025), https://www.aarp.org/social-security/workers-leaving-field-offices/ (citing a "Workforce Update" page on Defendant SSA's website that has since been taken down).

12.     Around the same time, multiple Senators raised concerns that "Social Security wrongly told disabled people and some seniors their benefits [had] ended."[9]

13.     In May 2025, internal SSA analysis reportedly assessed that the agency's new antifraud telephone policies had slowed retirement claims processing by 25 percent and led to a "degradation of public service."[10]

14.     Also in May 2025, Social Security had reportedly amassed a backlog of nearly 575,000 pending retirement claims, with around 140,000 languishing for at least 60 days.[11] The average wait time for phone calls to SSA increased substantially.[12]

15.     In June 2025, SSA removed from its website a variety of customer service metrics, including metrics on how long it takes for SSA to answer calls and process benefit applications.[13]

16.     Agency data also shows more Americans are claiming their Social Security benefits earlier, "sacrificing higher payments down the road for financial certainty now."[14]

---

[9] *See* U.S. Senator Elizabeth Warren, *Social Security wrongly told disabled people and some seniors their benefits ended, causing alarm*, Newsroom (Apr. 8, 2025), https://www.warren.senate.gov/newsroom/news-coverage/social-security-wrongly-told-disabled-people-and-some-seniors-their-benefits-ended-causing-alarm.

[10] *See* Natalie Aims, *DOGE Went Looking for Phone Fraud at SSA - and Found Almost None*, NextGov (May 15, 2025), https://www.nextgov.com/digitalgovernment/2025/05/doge-went-looking-phone-fraud-ssa-and-found-almost-none/405346/?oref=ng-homepage-river (describing "an internal May document obtained by Nextgov/FCW that examined potentially cutting the anti-fraud tool for phone claims").

[11] *See* Tami Luhby, "*Social Security drops controversial anti-fraud review amid growing claims backlog*," CNN (May 17, 2025), https://edition.cnn.com/2025/05/17/politics/social-security-anti-fraud-policy (discussing "an email from Stephen Evangelista, Social Security's deputy commissioner for operations, that was sent to employees and viewed by CNN").

[12] *See* Kenneal Patterson, *Trump Admin. Pulls Social Security Wait Times to Hide Bad Customer Service*, The Daily Beast (Jun. 21, 2025), https://www.thedailybeast.com/donald-trumps-social-security-admin-covers-up-customer-service-failures/ (discussing SSA data then available).

[13] *See* Rep. Judy Chu, *Letter to SSA Commissioner Bisignano*, House Ways & Means Committee (July 14, 2025), https://larson.house.gov/sites/evo-subsites/larson.house.gov/files/evo-media-document/07_14_2025-chu-w%26m-letter-to-social-security-commissioner-bisignano.pdf.

[14] *See* Alexandra Berzon et al., *The Bureaucrat and the Billionaire: Inside DOGE's Chaotic Takeover of Social Security*, The N.Y. Times (June 16, 2025), https://www.nytimes.com/2025/06/16/us/politics/doge-social-security.html (citing agency data).

17.     To shed light on reported disruptions and degradations in SSA's administration of programs and services of vital importance to millions of people, DFF filed several FOIA requests:

*Memos, Videos & Studies on Changes at SSA (2025-FOIA-02238)*

18.     On July 2, 2025, DFF sent a FOIA request to SSA seeking the following:

(1) A copy of the March 13, 2025 memorandum from Acting Deputy Commissioner Doris Diaz to Acting Commissioner Leland Dudek on "Strengthening Identity Assurance for SSA Transactions."[15]

(2) Copies of videos of weekly operational meetings posted to YouTube at the direction of Acting Commissioner Leland Dudek.[16]

(3) Any studies, evaluations, assessments, and/or data collections concerning the following that were conducted after January 20, 2025:

    A.  Number of daily visits to SSA offices;
    B.  Length of wait times to reach a representative via SSA's national 800 number;
    C.  Length of wait times for a call back from SSA;
    D.  Missed or delayed payments to beneficiaries; or
    E.  Frequency of SSA website crashes and/or system outages.

19.     This request sought records from January 20, 2025, until the date of the search.

20.     This request also sought a fee waiver on the grounds that "the release of the requested records is in the public interest," as defined by SSA regulation 20 C.F.R. § 402.85, "and not primarily in the commercial interest of the requester," *id.*

---

[15] See Judd Legum, *EXCLUSIVE: Memo Details Trump Plan to Sabotage the Social Security Administration*, Popular Info. (Mar. 17, 2025), https://popular.info/p/exclusive-memo-details-trump-plan.

[16] *See* SSA, *Social Security Increases Transparency and Accountability – Shares More Information Online* (Mar. 24, 2025), https://blog.ssa.gov/social-security-increases-transparency-and-accountability-shares-more-information-online/ (providing a broken link to the "Weekly Operational Report Meetings" playlist on YouTube); *see also* Alexandra Berzon et al., *The Bureaucrat and the Billionaire: Inside DOGE's Chaotic Takeover of Social Security*, The N.Y. Times (June 16, 2025), https://www.nytimes.com/2025/06/16/us/politics/doge-social-security.html (reporting that Acting Commissioner Dudek "directed staff members to publish online . . . YouTube videos of weekly operational meetings in which agency leaders discussed staff shortages, among other issues," but now the "meeting videos no longer appear online").

21.    On July 2, 2025, SSA acknowledged this request and assigned it tracking number 2025-FOIA-02238.

22.    On August 19, 2025, SSA sent a response to DFF's fee waiver request. SSA waived the fee for item (1) of DFF's request, but declined to waive or reduce the fee for the remaining portions of DFF's request.

23.    On September 8, 2025, DFF appealed SSA's partial denial of the fee waiver request. DFF received an automatic "thank you" email from SSA.

24.    On October 10, 2025, DFF followed up with the agency regarding its fee waiver appeal with a letter reiterating its request that SSA grant a full fee waiver. Exhibit 1.

25.    DFF has received no subsequent communication from SSA regarding this FOIA request.

*Communications on Impacts of Changes at SSA (2025-FOIA-02239)*

26.    On July 2, 2025, DFF sent a FOIA request to SSA seeking the following:

> All electronic communications (including emails, email attachments, complete email chains, calendar invitations, or attachments thereto, as well as any text messages or messages sent on messaging platforms such as Slack, Microsoft Teams, WhatsApp, Signal, or GChat) concerning (1) the March 13, 2025 memorandum from Acting Deputy Commissioner Doris Diaz to Acting Commissioner Leland Dudek on "Strengthening Identity Assurance for SSA Transactions;" (2) blocked or delayed Social Security payments; (3) increased processing and/or wait times; (4) service disruptions; or (5) system outages, sent or received by any government official listed below:
>
> > Officials:
> > a.    any present or former employee or affiliate of the "Department of Government Efficiency" ("DOGE") or the U.S. "DOGE" Service, including but not limited to

Steve Davis, Antonio Gracias, Akash Bobba, Ethan Shaotran, Edward Coristine and Aram Moghaddassi;

    b.   any present or former SSA political appointee, including but not limited to Leland Dudek, Frank Bisignano, Michael Russo, and Scott Coulter.

27.    This request sought records from March 1, 2025, until the date of the search.

28.    This request also sought a fee waiver on the grounds that "the release of the requested records is in the public interest," as defined by SSA regulation 20 C.F.R. § 402.85, "and not primarily in the commercial interest of the requester," *id*.

29.    On July 2, 2025, SSA acknowledged this request and assigned it tracking number 2025-FOIA-02239.

30.    On July 18, 2025, SSA sent a response to DFF's fee waiver request. SSA declined to waive or reduce the fee.

31.    On July 25, 2025, DFF appealed SSA's denial of the fee waiver request.

32.    On July 29, 2025, SSA acknowledged this appeal and assigned it tracking number 2025-APP-00937.

33.    On October 10, 2025, DFF followed up with the agency regarding its fee waiver appeal with a letter reiterating its request that SSA grant a full fee waiver.  Exhibit 2.

34.    DFF has received no subsequent communication from SSA regarding this FOIA request.

*Disruptions Following Changes at SSA (2025-FOIA-02240)*

35.    On July 2, 2025, DFF sent a FOIA request to SSA seeking the following:

All electronic communications (including emails, email attachments, complete email chains, calendar invitations, or attachments thereto, as well as any text messages or messages sent on messaging platforms such as Slack, Microsoft Teams, WhatsApp, Signal, or GChat) **sent** by (A)

any government official listed below and containing (B) any of the following key terms.

  A.  Officials:
    a. any present or former employee or affiliate of the "Department of Government Efficiency" ("DOGE") or the U.S. "DOGE" Service, including but not limited to Steve Davis, Antonio Gracias, Akash Bobba, Ethan Shaotran, Edward Coristine and Aram Moghaddassi;
    b. any present or former SSA political appointee, including but not limited to Leland Dudek, Frank Bisignano, Michael Russo, and Scott Coulter.

  B.  Key terms:
    a. Fraud
    b. Delay
    c. "Dead people"
    d. DMF
    e. "DHS data"
    f. "Missed payments"
    g. "Wait time"
    h. "Overwhelmed"
    i. "Field office"
    j. "RIF"
    k. "Identity verification"
    l. "ID verification"
    m. "Banking information"
    n. "Bank information"
    o. "Direct deposit"

36.  This request sought records from March 1, 2025, until the date of the search.

37.  This request also sought a fee waiver on the grounds that "the release of the requested records is in the public interest," as defined by SSA regulation 20 C.F.R. § 402.85, "and not primarily in the commercial interest of the requester," *id*.

38.  On July 2, 2025, SSA acknowledged this request and assigned it tracking number 2025-FOIA-02240.

39.  On July 29, 2025, SSA sent a response to DFF's fee waiver request. SSA declined to waive or reduce the fee.

40.     On August 6, 2025, DFF appealed SSA's denial of the fee waiver request. DFF received an automatic "thank you" email from SSA.

41.     On October 10, 2025, DFF followed up with the agency regarding its fee waiver appeal with a letter reiterating its request that SSA grant a full fee waiver. Exhibit 3.

42.     DFF has received no subsequent communication from SSA regarding this FOIA request.

*Memo on Service Impacts at SSA (2025-FOIA-02315)*

43.     On July 17, 2025, DFF sent a FOIA request to SSA seeking the following:

> A copy of the internal May 2025 document that stated, regarding the anti-fraud tool being used on telephone claims, that the policies had slowed retirement claims by 25% and led to a "degradation of public service."[17]

44.     This request sought records from May 1, 2025, through May 15, 2025.

45.     This request also sought a fee waiver on the grounds that "the release of the requested records is in the public interest," as defined by SSA regulation 20 C.F.R. § 402.85, "and not primarily in the commercial interest of the requester," *id*.

46.     On July 17, 2025, SSA acknowledged this request and assigned it tracking number 2025-FOIA-02315.

47.     On August 14, 2025, SSA sent a response to DFF's fee waiver request. SSA waived the fee.

48.     DFF has received no subsequent communication from SSA regarding this FOIA request.

---

[17] For further identifying information, *see* Natalie Aims, *DOGE Went Looking for Phone Fraud at SSA - and Found Almost None*, NextGov (May 15, 2025), https://www.nextgov.com/digitalgovernment/2025/05/doge-went-looking-phone-fraud-ssa-and-found-almost-none/405346/?oref=ng-homepage-river.

*Exhaustion of Administrative Remedies*

49.     As of the date of this Complaint, Defendant has failed to notify DFF of determinations regarding the FOIA requests described herein and of the appeals of fee waiver denials described herein. Through Defendant's failure to respond within the time limits required by law, DFF has constructively exhausted administrative remedies.

## CLAIMS FOR RELIEF

### Count 1 (Violation of FOIA, 5 U.S.C. § 552, Failure to Respond with Determinations)

48.     Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

49.     By failing to respond to Plaintiff's FOIA requests with determinations within the statutorily mandated time period, Defendant has violated its duties under 5 U.S.C. § 552, including but not limited to, its duties to conduct a reasonable search for responsive records, to take reasonable steps to release all nonexempt information, and to not withhold responsive records.

### Count 2 (Violation of FOIA and Implementing Regulations, 5 U.S.C. § 552, 20 C.F.R. § 402.85, Failure to Waive Fees)

50.     Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

51.     By failing to grant Plaintiff's requests for fee waivers where "the release of requested records is in the public interest," and no countervailing regulatory considerations apply, Defendant has violated its implementing regulation. 20 C.F.R. § 402.85.

52.     By failing to respond to Plaintiff's FOIA requests with determinations within the statutorily mandated time period, Defendant is precluded from assessing substantially all potential fees under FOIA. 5 U.S.C. § 522(a)(4), (6).

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court:

1. Order Defendant to conduct adequate searches for any and all responsive records to Plaintiff's FOIA requests using search methods reasonably calculated to lead to discovery of all responsive records;

2. Order Defendant to produce, by a date certain, any and all non-exempt responsive records and a *Vaughn* index of any responsive records withheld under a claim of exemption;

3. Enjoin Defendant from continuing to withhold any and all non-exempt responsive records;

4. Order Defendant to grant Plaintiff's fee waiver requests;

5. Enjoin Defendant from assessing all or a substantial portion of all possible fees in connection with processing Plaintiff's requests;

6. Award Plaintiff its costs, attorneys' fees, and other disbursements for this action; and

7. Grant any other relief this Court deems appropriate.

Dated: October 14, 2025

Respectfully submitted,

/s/ *Daniel A. McGrath*

Daniel A. McGrath
(D. Md. Bar No. 31501)
Amy C. Vickery
(*pro hac vice* forthcoming)
Robin F. Thurston
(D. Md. Bar No. 31584)
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
dmcgrath@democracyforward.org
avickery@democracyforward.org
rthurston@democracyforward.org

Exhibit 1



October 10, 2025

**VIA ELECTRONIC DELIVERY**

Social Security Administration
Office of Privacy and Disclosure
G-401 WHR 6401 Security Boulevard
Baltimore, Maryland 21235
FOIA.Public.Liaison@ssa.gov

**Re: Constructive Denial of DFF's Fee Waiver Appeal for FOIA Request 2025-FOIA-02238**

To FOIA Officials:

Democracy Forward Foundation ("DFF") writes to follow-up on its appeal of the Social Security Administration's ("SSA") partial denial of a fee waiver in connection with DFF's FOIA request 2025-FOIA-02238. DFF appealed this partial denial on September 8, 2025. The statutory deadline to adjudicate DFF's appeal has now passed. DFF writes to reiterate that a full fee waiver is merited for this request.

## I.       Background

### A.       DFF's FOIA Request

DFF's FOIA request 2025-FOIA-02238 seeks records concerning disruptions and degradations in SSA's operations caused by the Trump Administration's enactment of work force reductions and other policy changes. Specifically, DFF's request 2025-FOIA-02238 seeks:

(1) A copy of the March 13, 2025 memorandum from Acting Deputy Commissioner Doris Diaz to Acting Commissioner Leland Dudek on "Strengthening Identity Assurance for SSA Transactions."[1]

(2) Copies of videos of weekly operational meetings posted to YouTube at the direction of Acting Commissioner Leland Dudek.[2]

---

[1] See Judd Legum, *EXCLUSIVE: Memo Details Trump Plan to Sabotage the Social Security Administration*, Popular Info. (Mar. 17, 2025), https://popular.info/p/exclusive-memo-details-trump-plan.

[2] *See* SSA, *Social Security Increases Transparency and Accountability – Shares More Information Online* (Mar. 24, 2025), https://blog.ssa.gov/social-security-increases-transparency-and-accountability-shares-more-information-online/ (providing a broken link to the "Weekly Operational Report Meetings" playlist on YouTube); *see also* Alexandra Berzon et al., *The Bureaucrat and the Billionaire: Inside DOGE's Chaotic Takeover of Social Security*, The N.Y. Times (June 16, 2025), https://www.nytimes.com/2025/06/16/us/politics/doge-social-



(3) Any studies, evaluations, assessments, and/or data collections concerning the following that were conducted after January 20, 2025:

    A. Number of daily visits to SSA offices;
    B. Length of wait times to reach a representative via SSA's national 800 number;
    C. Length of wait times for a call back from SSA;
    D. Missed or delayed payments to beneficiaries; or
    E. Frequency of SSA website crashes and/or system outages.

This request seeks records from January 20, 2025, until the date of the search.

DFF requested a waiver of all fees associated with processing records for this request on the grounds that "disclosure of the information [DFF seeks] is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 20 C.F.R. § 402.85.

## B.    SSA's Response

On August 19, 2025, SSA responded to DFF's fee waiver request. SSA explained that it may waive or reduce fees associated with FOIA requests if its finds that waiver is in the "public interest." *See* 20 C.F.R. § 402.85. In analyzing whether the disclosure is in the public interest, the SSA considers:

(1) how the records pertain to the Federal government's operations or activities;
(2) whether disclosure would reveal any meaningful information about government operations or activities not already known to the public; and
(3) whether the contribution to public understanding would be significant.

20 C.F.R. § 402.85(b). Applying these factors, the SSA granted a fee waiver for the item (1) of DFF's FOIA request. However, the SSA assessed that DFF's fee waiver request "fail[ed] to explain with reasonable specificity how the disclosure of the remaining information [DFF] requested will meet the above factors." The SSA, thus, declined to waive the fee for items (2) and (3).

## C.    DFF's Appeal

DFF appealed the partial denial of DFF's fee waiver request on September 8, 2025. In that appeal, DFF explained why items (2) and (3) of DFF's FOIA request would provide significant and meaningful information to the public about government operations. SSA has not timely responded to DFF's appeal. Given SSA's lack of response, DFF submits this letter to reiterate that a full fee waiver is merited here. DFF incorporates by reference the reasoning and support from its July 2, 2025 fee waiver request and September 8 appeal.

---

security.html (reporting that Acting Commissioner Dudek "directed staff members to publish online . . . YouTube videos of weekly operational meetings in which agency leaders discussed staff shortages, among other issues," but now the "meeting videos no longer appear online").



## II. Each Item of FOIA Request 2025-FOIA-02238 Merits a Full Fee Waiver.

### A. Item (3): Studies, evaluations, assessments, and/or data collections

Waiving fees associated with item (3) of DFF's FOIA request 2025-FOIA-02238 is in the "public interest" because:

Item (3) "pertain[s] to the Federal government's operations and activities," 20 C.F.R. § 402.85(b)(2)(i), in that it seeks "studies, evaluations, assessments, and/or data collections" of operational metrics by the SSA. The operational metrics sought—length of wait times, daily visits to SSA offices, missed or delayed payments, frequency of website crashes or system outages— quite literally measure the efficiency and success of the SSA's *operations*. Media reports suggest that recent policy changes by the Trump Administration at the SSA have resulted in negative operational outcomes across many of these metrics.[3]

Obtaining the operational metrics sought by item (3) will "reveal . . . meaningful information about government operations or activities not already known to the public" *id.* § 402.85(b)(2)(ii), because media outlets further report that the SSA "has stopped making public 34 real-time performance metrics about things like how long [callers] will have to wait to reach a live person on the phone."[4] And independent investigations suggest that the metrics still available on the SSA's website are inaccurate and misleading.[5]

---

[3] *See* Legum, *supra* note 1 (excerpting internal SSA memo explaining that proposed changes to phone services would result in increased "foot traffic" to field offices by "approximately 75,000- 85,000 additional visitors per week," "longer wait times and processing time," and "disproportionate impact on vulnerable populations," among other predicted impacts and risks); *see also* The Alliance for Rights and Recovery, "*Social Security Website Keeps Crashing, as DOGE Demands Cuts to IT Staff: WP*," (Apr. 11, 2025) https://rightsandrecovery.org/e-news-bulletins/2025/04/11/social-security-website-keeps-crashing-as-doge-demands-cuts-to-it-staff-wp/ (explaining "[m]any of the [SSA's] network outages appear to be caused by an expanded fraud check system imposed by the DOGE team"); *id.* (explaining that a system error erroneously notified SSI recipients that they were "currently not receiving payments" and caused "dozens of calls . . . from nervous clients who saw the inaccurate message"); Natalie Alms, "*DOGE went looking for phone fraud at SSA — and found almost none,*" Nextgov/FCW (May 15, 2025), https://www.nextgov.com/digital-government/2025/05/doge-went-looking-phone-fraud-ssa-and-found-almost-none/405346/ (reporting the institution of certain anti-fraud tools "slowed retirement claim processing by 25%").

[4] Sarah D. Wire, "*How long will you wait for Social Security help? Why it's anybody's guess,*" USA Today (June 26, 2025), https://www.usatoday.com/story/news/politics/2025/06/26/social-security-wait-times-controversy/84334688007; *see also* Rep. Judy Chu, *Letter to SSA Commissioner Bisignano*, House Ways & Means Committee (July 14, 2025), https://larson.house.gov/sites/evo-subsites/larson.house.gov/files/evo-media-document/07_14_2025-chu-w%26m-letter-to-social-security-commissioner-bisignano.pdf.

[5] Wire, *supra* note 4 (suggesting that call-back wait of 19.2 minutes listed on SSA website was actually nearly an hour and 45 minutes and often exceeded three hours).



Finally, "the contribution to public understanding" of item (3) "would be significant," *id.* § 402.85(b)(2)(iii), because firsthand accounts of Social Security recipients and their representatives suggest they "are trying to assess impact" of various policy changes as the SSA "but the agency is not . . . [being] transparent."[6] Media outlets report that the White House "pressur[ed] Social Security administrators to reduce the information they put online that could draw attention to problems" and cause "political fallout."[7] The public has a right to understand the impact of the Trump Administration's policies at the SSA and the records DFF seeks in item (3) will contribute to the public's understanding of those policies and impacts.

## B. Item (2): Operational meeting videos

For similar reasons, waiving fees associated with item (2) of DFF's FOIA request 2025-FOIA-02238 is in the "public interest" because:

Item (3) "pertain[s] to the Federal government's operations and activities," 20 C.F.R. § 402.85(b)(2)(i), in that it seeks videos of SSA's weekly *operational* meetings that were previously posted to YouTube.[8] Media outlets report that in these videos the former Acting Administrator of SSA Leland Dudek "highlighted potential management problems," including "staff shortages" and office closures.[9] Such staff shortages—which are being exacerbated by agency plans to cut 10 percent of its employees—coincide with "concern over DOGE-induced policy changes" that have "caused members of the public to clog the agency's phone lines and crowd into field offices."[10]

Obtaining the weekly operational videos sought by item (2) will "reveal . . . meaningful information about government operations or activities not already known to the public" *id.* § 402.85(b)(2)(ii), because media outlets report that, here too, White House officials demanded the SSA remove these videos from YouTube.[11] The meeting videos are indeed no publicly longer available.[12]

Finally, the weekly operational videos sought in item (2) will contribute significantly to public understanding, § 402.85(b)(2)(iii), because many of the operational issues reportedly discussed in

---

[6] Alfred Lubrano, "*DOGE cuts have made it hard for Philly seniors to get Social Security offices on the phone*," The Philadelphia Inquirer (June 27, 2025), https://www.inquirer.com/politics/pennsylvania/social-security-philadelphia-doge-trump-administration-20250627.html.

[7] Jack Healy et al., "*Just a Mess': Staff Cuts, Rushed Changes and Anxiety at Social Security*," The New York Times (Apr. 8, 2025), https://www.nytimes.com/2025/04/08/us/social-security-trump.html; *see also* Lubrano, *supra* note 7 (reporting "data removals 'hide how much they've destroyed the system's customer service'"); Kenneal Patterson, *Trump Admin. Pulls Social Security Wait Times to Hide Bad Customer Service*, The Daily Beast (Jun. 21, 2025), https://www.thedailybeast.com/donald-trumps-social-security-admin-covers-up-customer-service-failures/ (discussing SSA data then available).

[8] Berzon, *supra* note 2.

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Supra* note 2.



these videos have been attributed to policy changes instituted by the Trump Administration at the SSA.[13] Although the White House has "pressure[ed] Social Security administrators to reduce the information they put online that could draw attention to problems" and cause "political fallout"[14]— like the YouTube videos sought here—the public has a right to understand the impact of the Administration's policy choices on benefits programs that millions of people rely on.

### III.    Conclusion

Waiving fees associated with items (2) and (3) of DFF's FOIA request 2025-FOIA-02238 will further the "public interest." DFF asks that SSA grant a full waiver of any fees associated with FOIA request 2025-FOIA-02238.

<u>/s/ Skye Perryman</u>

Skye Perryman
President & CEO
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043

---

[13] *See, e.g.*, Eli Hager, "*The Untold Saga of What Happened When DOGE Stormed Social Security*," ProPublica (Sep 8, 2025), https://www.propublica.org/article/inside-doge-social-security-takeover-leland-dudek (explaining that changes to SSA identification policies caused "[m]any [to] flock to field offices to preemptively provide proof of their identities even when they didn't need to"); *see also* note 3.
[14] *Supra* note 8.



September 8, 2025

**VIA Electronic Delivery**

Executive Director for the Office of Privacy and Disclosure
Social Security Administration
G-401 WHR
6401 Security Boulevard
Baltimore, MD 21235
FOIA.Public.Liaison@ssa.gov

**Re: Appeal of fee waiver denial, supplementary information, and status update for Freedom of Information Act Request #2025-FOIA-02238**

Dear FOIA Appeal Officer:

We write in response to the Social Security Administration's ("SSA") partial denial of Democracy Forward Foundation's ("DFF") request for a fee waiver with respect to its July 2, 2025 Freedom of Information Act (FOIA) request seeking:

(1) A copy of the March 13, 2025 memorandum from Acting Deputy Commissioner Doris Diaz to Acting Commissioner Leland Dudek on "Strengthening Identity Assurance for SSA Transactions."[1]

(2) Copies of videos of weekly operational meetings posted to YouTube at the direction of Acting Commissioner Leland Dudek.[2]

(3) Any studies, evaluations, assessments, and/or data collections concerning the following that were conducted after January 20, 2025:

---

[1] *See* Judd Legum, *EXCLUSIVE: Memo Details Trump Plan to Sabotage the Social Security Administration*, Popular Info. (Mar. 17, 2025), https://popular.info/p/exclusive-memo-details-trump-plan.

[2] *See* SSA, *Social Security Increases Transparency and Accountability – Shares More Information Online* (Mar. 24, 2025),
https://blog.ssa.gov/social-security-increases-transparency-and-accountability-shares-more-information-online/ (providing a broken link to the "Weekly Operational Report Meetings" playlist on YouTube); *see also* Alexandra Berzon et al., *The Bureaucrat and the Billionaire: Inside DOGE's Chaotic Takeover of Social Security*, The New York Times (June 16, 2025), https://www.nytimes.com/2025/06/16/us/politics/doge-social-security.html (reporting that Acting Commissioner Dudek "directed staff members to publish online . . . YouTube videos of weekly operational meetings in which agency leaders discussed staff shortages, among other issues," but now the "meeting videos no longer appear online").



A. Number of daily visits to SSA offices;
B. Length of wait times to reach a representative via SSA's national 800 number;
C. Length of wait times for a call back from SSA;
D. Missed or delayed payments to beneficiaries; or
E. Frequency of SSA website crashes and/or system outages.

This request seeks records from January 20, 2025 until the date of the search.

On August 19, 2025, SSA responded to DFF's request by waiving the fee for item 1 of the request for any "final decision memorandum" but *denying* the organization's request for a fee waiver for items 2 and 3.[3] SSA's response indicates that SSA believes the requested information would not provide significant and meaningful information to the public about government operations. SSA also stated that DFF "must be reasonably specific in [its] waiver request as to the specific Government operation or activity and provide direct, clear (not remote or attenuated) connections to the meaningful information [DFF] seek[s]." DFF appeals the denial of a fee waiver for items 2 and 3 of Request 2025-FOIA-02238, both on the basis of the record originally before the agency and based on recent developments.

In the original fee waiver request, DFF explained that the requested records would make a significant contribution to the public understanding of the Social Security program, which currently benefits 73 million individuals. Since March 2025, news media has reported an alarming number of complaints of service disruptions at the SSA. Internal documents revealed that new anti-fraud measures had "slowed retirement claim processing by 25% and led to a 'degradation of public service.'"[4] By May, the agency had reportedly amassed a backlog of 575,000 pending retirement claims.[5] In early April, around the same time that the anti-fraud measures were rolled out, disabled Americans and low-income senior citizens were erroneously notified that they would no longer receive payments.[6] These are only a few examples in a growing pattern of disruption and degradation of a vital program that 73 million individuals rely on.

---

[3] DFF notes that, for some unexplained reason, SSA granted the fee waiver for this portion of the request when the analysis that applies to the other components of the request is nearly identical. This granted no functional relief to DFF, as Item 1 of the request seeks a discrete, high-profile, easily identifiable final document that would not likely result in fees in any case.
[4] Natalie Alms, "*DOGE went looking for phone fraud at SSA — and found almost none*," NextGov (May 15, 2025), https://www.nextgov.com/digital-government/2025/05/doge-went-looking-phone-fraud-ssa-and-found-almost-none/405346/
[5] Tami Luhby, "*Social Security drops controversial anti-fraud review amid growing claims backlog*," CNN (May 17, 2025), https://edition.cnn.com/2025/05/17/politics/social-security-anti-fraud-policy
[6] Aimee Picchi, "*Social Security wrongly told disabled people and some seniors their benefits ended, causing alarm*," CBS News (April 8, 2025), https://www.cbsnews.com/news/social-security-doge-ssi-error-message-currently-not-receiving-payments/



Given the far-reaching impact of any service disruptions or degradations, item 3 of DFF's request for studies, evaluations, assessments, and/or data collections on topics likely to be indicative of service disruptions and/or degradations *would* provide significant and meaningful information to the public about government operations. Contrary to the SSA's assessment, the requested records do not have a "remote or attenuated connection" to government operations, as records concerning service disruptions or degradation at the SSA are directly connected to the agency's core responsibilities, including distributing Social Security benefits payments and processing claims. For example, the disclosure of evaluations concerning wait time lengths and delayed or missed payments to beneficiaries would directly aid the public in understanding the impact of recent policy and staffing changes at the SSA. Because recent policy changes at the SSA have been mired in confusion, the public has been forced to rely on incomplete news reporting. SSA's disclosure of the records requested by DFF would provide an official account to the public, and thereby aid public understanding of the government's operation of vital services relied upon by millions.

For similar reasons, item (2) of DFF's request for video records of weekly operational meetings previously posted to YouTube would assist the public's understanding of the government's operations of the Social Security program and attendant services. These videos – previously available to the public – reportedly documented agency officials discussing issues such as staff shortages, claims backlogs, and service disruptions that implicate the agency's ability and effectiveness in executing its core functions. Moreover, the videos reportedly documented agency officials' plans to address such problems. Thus, here too, disclosure of the video records requested by DFF would aid understanding of the government's operation of vital services relied upon by millions.

For the above reasons, DFF asks the SSA to waive the fee for items 2 and 3 of Request 2025-FOIA-02238, as the SSA correctly did for item 1 of DFF's request.

Additionally, we ask that SSA provide an update on its processing, including whether the agency has yet completed a search and when it will issue a final response.

*/s/ Skye Perryman*
Skye Perryman
President & CEO
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043



# SOCIAL SECURITY

Refer to:
S9H: 2025-FOIA-02238

August 19, 2025

Ms. Skye Perryman and Mr. Aman George
Democracy Forward Foundation
P.O. Box 34553
Washington, DC  20043
foia@democracyforward.org

Dear Ms. Perryman and Mr. George:

I am responding to your request for a fee waiver concerning your July 2, 2025 Freedom of Information Act (FOIA) request to the Social Security Administration (SSA) for the following records from January 20, 2025 to the date of the search:

1. A copy of the March 13, 2025 memorandum from Acting Deputy Commissioner Doris Diaz to Acting Commissioner Leland Dudek on, "Strengthening Identity Assurance for SSA Transactions";
2. Copies of videos of weekly operational meetings posted to YouTube at the direction of Acting Commissioner Leland Dudek; and
3. Any studies, evaluations, assessments, and/or data collections concerning the following that were conducted after January 20, 2025:

   A. Number of daily visits to SSA offices;
   B. Length of wait times to reach a representative via SSA's national 800 number;
   C. Length of wait times for a call back from SSA;
   D. Missed or delayed payments to beneficiaries; or
   E. Frequency of SSA website crashes and/or system outages.

I reviewed your request for a fee waiver and I have decided to waive the fee for item 1 of your request for any *final* decision memorandum.  Records that are in draft are generally exempt from disclosure pursuant to the FOIA Exemption 5 that protects the deliberative process privilege.

I have decided not to waive or reduce the fee for the remaining portions of your request.  We may waive or reduce the fee under our regulation at 20 C.F.R. § 402.85 if we find that waiver is in the public interest.  We make this determination if we find that disclosure of the information meets both tests below:

- it is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government, and
- it is not primarily in the requester's commercial interest.

Our regulation (20 C.F.R. § 402.85(b)) lists factors we consider in analyzing whether disclosure is in the public interest.  These factors include:

- how the records pertain to the Federal government's operations or activities,
- whether disclosure would reveal any meaningful information about government operations or activities not already known to the public, and
- whether the contribution to public understanding would be significant.

To be granted a fee waiver, "you must be reasonably specific in your waiver request as to the specific Government operation or activity and provide direct, clear (not remote or attenuated) connections to the meaningful information you seek."  20 C.F.R. § 402.85(b)(2)(iv).  Further, as our regulation indicates, "[g]eneralized interest in government programs is not reasonably specific to grant waiver." *Id.*  While we find that these factors are met regarding item 1 of your request, your fee waiver request fails to explain with reasonable specificity how the disclosure of the remaining information you requested will meet the above factors, and I have not otherwise found that release of the records requested would meet the abovementioned factors.  Accordingly, applying the standards listed above, I cannot waive the fee.

We are charging you fees for your request under section 1106(c) of the Social Security Act (Act) (42 U.S.C. § 1306(c)).  Because we have invoked section 1106(c), the FOIA fee provisions in 5 U.S.C. § 552 are not applicable to your request.  Section 1106(c) applies notwithstanding FOIA and provides that we charge the full cost for search and reproduction of records when the request is for a purpose not directly related to the administration of a program under the Act (20 C.F.R. § 402.80), *regardless* of the fee provisions in FOIA.  We determined that your request is not directly related to the administration of the Act.  Accordingly, we will charge you for the full cost to provide the requested information (42 U.S.C. § 1306(c); 20 C.F.R. § 402.80).

We will send further correspondence when we determine what fees, if any, apply to your request.

Please note that this response is limited to the determination on your fee waiver request; our office is still assessing your request as phrased and will provide subsequent correspondence on that determination.

If you have questions or would like further assistance with your request, you may contact our FOIA Public Liaison by email at FOIA.Public.Liaison@ssa.gov; by phone at 410-965-1727, by choosing Option 2; or facsimile at 833-795-0132.

You may also contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration for dispute resolution services.  OGIS is an entity outside of SSA that offers mediation services to resolve disputes between FOIA requesters and Federal agencies.  The contact information for OGIS is as follows:  Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road – OGIS, College Park, MD  20740-6001; email at ogis@nara.gov; telephone at 202-741-5770; toll-free at 1-877-684-6448; or facsimile at 202-741-5769.

If you disagree with this decision, you may file a written appeal with the Executive Director for the Office of Privacy and Disclosure, Social Security Administration, G-401 WHR, 6401 Security Boulevard, Baltimore, MD  21235.  Your appeal must be postmarked or electronically transmitted to FOIA.Public.Liaison@ssa.gov within 90 days of the date of our response to your initial request.  Please mark the envelope or subject line with "Freedom of Information Appeal."

Thank you for your request.

Sincerely,

Jennifer Karangelen
Acting Freedom of Information Officer



July 2, 2025

**VIA ELECTRONIC DELIVERY**

Social Security Administration
Office of Privacy and Disclosure
G-401 WHR 6401 Security Boulevard
Baltimore, Maryland 21235
Via online portal

**Re: Freedom of Information Action Request**

Dear FOIA Officer:

Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552, Democracy Forward Foundation submits this request for records.

*Records Requested*

Democracy Forward Foundation ("DFF") requests that the Social Security Administration ("SSA") produce the following within twenty (20) business days:

(1) A copy of the March 13, 2025 memorandum from Acting Deputy Commissioner Doris Diaz to Acting Commissioner Leland Dudek on "Strengthening Identity Assurance for SSA Transactions."[1]

(2) Copies of videos of weekly operational meetings posted to YouTube at the direction of Acting Commissioner Leland Dudek.[2]

---

[1] *See* Judd Legum, *EXCLUSIVE: Memo Details Trump Plan to Sabotage the Social Security Administration*, Popular Info. (Mar. 17, 2025), https://popular.info/p/exclusive-memo-details-trump-plan.

[2] *See* SSA, *Social Security Increases Transparency and Accountability – Shares More Information Online* (Mar. 24, 2025), https://blog.ssa.gov/social-security-increases-transparency-and-accountability-shares-more-information-online/ (providing a broken link to the "Weekly Operational Report Meetings" playlist on YouTube); *see also* Alexandra Berzon et al., *The Bureaucrat and the Billionaire: Inside DOGE's Chaotic Takeover of Social Security*, The New York Times (June 16, 2025), https://www.nytimes.com/2025/06/16/us/politics/doge-social-security.html (reporting that Acting Commissioner Dudek "directed staff members to publish online . . . YouTube videos of weekly operational meetings in which agency leaders discussed staff shortages, among other issues," but now the "meeting videos no longer appear online").



(3) Any studies, evaluations, assessments, and/or data collections concerning the following that were conducted after January 20, 2025:

    A.  Number of daily visits to SSA offices;
    B.  Length of wait times to reach a representative via SSA's national 800 number;
    C.  Length of wait times for a call back from SSA;
    D.  Missed or delayed payments to beneficiaries; or
    E.  Frequency of SSA website crashes and/or system outages.

This request seeks records from January 20, 2025 until the date of the search.

### *Scope of Search*

FOIA requires agencies to disclose information, with only limited exceptions. 5 U.S.C. § 552(a)(8)(A). In the event that any of the requested documents cannot be disclosed in their entirety, we request that you release any material that can be reasonably segregated. *See* 5 U.S.C. § 552(b). Should any documents or portions of documents be withheld, we further request that you state with specificity the description of the document to be withheld and the legal and factual grounds for withholding any documents or portions thereof in an index, as required by *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). Should any document include both disclosable and non-disclosable material that cannot reasonably be segregated, we request that you describe what proportion of the information in a document is non-disclosable and how that information is dispersed throughout the document. *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

If requested records are located in, or originated in, another agency, department, office, installation or bureau, please refer this request or any relevant portion of this request to the appropriate entity.

To the extent that the records are readily reproducible in an electronic format, we would prefer to receive the records in that format. However, if certain records are not available in that format, we are willing to accept the best available copy of each such record.

Please respond to this request in writing within 20 working days as required under 5 U.S.C. § 552(a)(6)(A)(i). If all of the requested documents are not available within that time period, we request that you provide us with all requested documents or portions of documents that are available within that time period.

### *Request for Fee Waiver*



Pursuant to 42 U.S.C. § 1306 and your agency's regulations, DFF requests a waiver of all fees associated with processing records for this request. Your regulations provide for documents to be furnished to requesters at no fee or reduced fees when "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 20 C.F.R. § 402.85.

When assessing a request for a fee waiver, your agency considers the following factors: (i) how the records pertain to the Federal government's operations or activities; (ii) whether disclosure would reveal any meaningful information about government operations or activities not already known to the public; and (iii) whether the contribution to public understanding would be significant. *Id.* § 402.85(2). Considering these factors, DFF's request merits a fee waiver.

First, the requested records pertain to the Federal government's operations and activities because they concern changes contemplated and made by the SSA to the administration of the Social Security program as well as the impact of those changes. Second, the requested records will reveal meaningful information about government operations and/or activities not already known to the public because the rollout of these changes was mired in confusion[3] and reports suggest the Trump Administration directed the SSA to undertake these changes in a purposefully nontransparent manner.[4] Finally, the contribution of DFF's request to the public understanding of Social Security will be significant because Social Security is a program that currently benefits 73 million individuals[5] and agency data shows that, in light of the chaos emanating from the SSA, "more Americans have claimed their Social Security benefits earlier," "sacrificing higher payments down the road for financial certainty now."[6] DFF intends to publicize records DFF receives to contribute significantly to the public's understanding of how this Administration's policies are impacting the benefits that Social Security recipients have earned.

---

[3] *See, e.g.*, SSA, *Correcting the Record About Social Security Direct Deposit and Telephone Services* (Apr. 18, 2025),
https://blog.ssa.gov/correcting-the-record-about-social-security-direct-deposit-and-telephone-ser
vices/.
[4] Alexandra Berzon et al., *The Bureaucrat and the Billionaire: Inside DOGE's Chaotic Takeover of Social Security*, The New York Times (June 16, 2025),
https://www.nytimes.com/2025/06/16/us/politics/doge-social-security.html (reporting "White House officials ultimately demanded that [Acting Commissioner Dudek] halt many of [his] transparency initiatives").
[5] *See* Molly Weston Williamson, *Cuts to the Social Security Administration Threaten Millions of Americans' Retirement and Disability Benefits*, Ctr. for Am. Progress (Mar. 12, 2025),
https://www.americanprogress.org/article/cuts-to-the-social-security-administration-threaten-mill
ions-of-americans-retirement-and-disability-benefits/.
[6] *Supra* note 4.



To this latter point, DFF has a demonstrated ability to disseminate information of public interest requested through FOIA. When DFF obtains materials through FOIA requests that are of significant public interest, DFF's communications staff regularly works to ensure that these materials and their contents are featured in press articles educating the public about the operation of government; many articles feature additional commentary and analysis from DFF staff about those materials and their relevance to policy issues of public interest. Indeed, records received by DFF have previously formed the basis of news reports.[7]

---

[7] *See, e.g.*, Alexander Nazaryan, *Why did right-wing troll Charles C. Johnson meet with Commerce Secretary Wilbur Ross?*, Yahoo News (May 14, 2019), https://news.yahoo.com/why-did-rightwing-troll-charles-c-johnson want-to-meet-with-commerce-secretary-wilbur-ross-090000636.html; Derek Kravitz and Jack Gillum, *"Happy to Do It": Emails Show Current FAA Chief Coordinated With Ex-Lobbyist Colleagues on Policy*, ProPublica (Mar. 27, 2019), https://www.propublica.org/article/dan-elwell-current-faa-chief-coordinated-with-ex-lobbyist-colleagues-on policy; Hamid Aleaziz, *Emails Show US Border Officials Didn't Receive "Zero Tolerance" Guidance Until After the Policy Was Enacted*, Buzzfeed News (Feb. 28, 2019), https://www.buzzfeednews.com/article/hamedaleaziz/zero tolerance-policy-guidance-dhs-family-separation; Jonathan Cohn and Jeffrey Young, *Emails Show Trump Administration Was Told Obamacare Ad Cuts Could Hurt Enrollment*, Huffpost (Dec. 17, 2018), https://www.huffingtonpost.com/entry/trump-verma-obamacare-advertising-cut_us_5c115061e 4b084b082ff8dba; Madison Pauly, *When the Biggest Prison Company Complained About a California Sanctuary Law, ICE Listened*, Mother Jones (Dec. 7, 2018), https://www.motherjones.com/politics/2018/12/geo-memo-private-prison-california immigration/; Eliza Rellman, *'Just answer the question and kill this story': In internal emails, Heather Nauert criticized Rex Tillerson's refusal to deny reports that he called Trump a 'moron,'* Business Insider (Nov. 2, 2018), https://www.businessinsider.com/heather-nauert-rex-tillerson-trump-moron-2018-11; Rebecca Klein, *Lawsuit Accuses Betsy DeVos And Her Deputies Of Being Motivated By Sexism*, HuffPost (Oct. 31, 2018), https://m.huffpost.com/us/entry/us_5bd9ff6ee4b01abe6a1ad4a9; Nick Penzenstadler, *A year after Vegas shooting, ATF emails reveal blame, alarm over bump stocks*, USA Today (Oct. 1, 2018), https://www.usatoday.com/story/news/2018/10/01/year-after-vegas-shooting-atf-emails-reveal -blame-alarm-over bump-stocks/1432137002/; Jessica Kwong, *Ivanka Trump was more than complicit in Obama equal pay rollback she had a hand in it, watchdog alleges*, Newsweek (Aug. 29, 2018), https://www.newsweek.com/ivanka-trump equal-pay-complicit-obama-1093833; Vera Bergengruen, *New Emails Show What Happens When The Pentagon Has To Scramble To Catch Up To Trump*, Buzzfeed News (July 25, 2018), https://www.buzzfeednews.com/article/verabergengruen/these-emails-show-what-happens-whe n-the-white-house-keeps; Erin Dooley, *Exclusive: Former for-profit college executive shaped Education Department policy that could benefit former employers: Documents*, ABC News (May 15, 2017), https://abcnews.go.com/US/exclusive-profit



Democracy Forward Foundation is not filing this request to further any commercial interest, and any information obtained by Democracy Forward Foundation as a result of this request and disclosed will be disclosed at no cost.

If the request for a waiver is denied, we are willing to pay all reasonable fees incurred for searching and duplicating records in responding to this request, up to $100. If the costs of responding to this request should exceed that amount, please contact us before incurring costs exceeding that amount.

*Conclusion*

If you need clarification as to the scope of the request, have any questions, or foresee any obstacles to releasing fully the requested records within 20 business days, please contact me as soon as possible at foia@democracyforward.org.

We appreciate your assistance and look forward to your prompt response.

Sincerely,

*/s/ Skye Perryman*
Skye Perryman
President & CEO
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043

---

college-executive-shaped-education-department-policy/story?id=55108981; Heidi Przybyla, *Notes, emails reveal Trump appointees' war to end HHS teen pregnancy program*, NBC News (Mar. 20, 2018), https://www.nbcnews.com/politics/politics-news/notes-emails-reveal-trump-appointees-war-end-hhs-teen pregnancy-n857686; Dominic Holden, *Documents Show The Trump Administration Approved Bump Stocks Before It Opposed Them*, Buzzfeed News (Mar. 22, 2018), https://www.buzzfeednews.com/article/dominicholden/trump administration-bump-stocks; Bernard Condon, *Trump Advisor Denies He Cheered End of Tunnel Funding Deal*, Associated Press (Feb. 13, 2018), *available at* https://www.usnews.com/news/business/articles/2018-02-13/trump adviser-denies-he-cheered-end-of-tunnel-funding-deal; Celeste Katz, *Interior Department tapped wildfire preparedness funds for Ryan Zinke helicopter tour*, Newsweek (Dec. 29, 2017), https://www.newsweek.com/ryan zinke-interior-department-helicopters-wildfires-757857.

Exhibit 2



October 10, 2025

**VIA ELECTRONIC DELIVERY**

Social Security Administration
Office of Privacy and Disclosure
G-401 WHR 6401 Security Boulevard
Baltimore, Maryland 21235
FOIA.Public.Liaison@ssa.gov

**Re: Constructive Denial of DFF's Fee Waiver Appeal for FOIA Request 2025-FOIA-02239**

To FOIA Officials:

Democracy Forward Foundation ("DFF") writes to follow-up on its appeal of the Social Security Administration's ("SSA") denial of a fee waiver in connection with DFF's FOIA request 2025-FOIA-02239. DFF appealed this denial on July 25, 2025. The statutory deadline to adjudicate DFF's appeal has now passed. DFF writes to reiterate that a full fee waiver is merited for this request.

## I.  Background

### A.  DFF's FOIA Request

DFF's FOIA request 2025-FOIA-02239 seeks records concerning disruptions and degradations in SSA's administration of its core programs and services caused by the Trump Administration's enactment of certain policy changes and work force reductions. Specifically, DFF's request 2025-FOIA-02239 seeks:

> All electronic communications (including emails, email attachments, complete email chains, calendar invitations, or attachments thereto, as well as any text messages or messages sent on messaging platforms such as Slack, Microsoft Teams, WhatsApp, Signal, or GChat) concerning (1) the March 13, 2025 memorandum from Acting Deputy Commissioner Doris Diaz to Acting Commissioner Leland Dudek on "Strengthening Identity Assurance for SSA Transactions;" (2) blocked or delayed Social Security payments; (3) increased processing and/or wait times; (4) service disruptions; or (5) system outages, sent or received by any government official listed below:
>
> Officials:
> a. any present or former employee or affiliate of the "Department of Government Efficiency" ("DOGE") or the U.S. "DOGE" Service, including but not limited to



Steve Davis, Antonio Gracias, Akash Bobba, Ethan Shaotran, Edward Coristine and Aram Moghaddassi;

b.  any present or former SSA political appointee, including but not limited to Leland Dudek, Frank Bisignano, Michael Russo, and Scott Coulter.

This request seeks records from March 1, 2025, until the date of the search.

DFF requested a waiver of all fees associated with processing records for this request on the grounds that "disclosure of the information [DFF seeks] is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 20 C.F.R. § 402.85.

## B.  SSA's Response

On July 18, 2025, SSA denied DFF's fee waiver request. SSA explained that it may waive or reduce fees associated with FOIA requests if it finds that waiver is in the "public interest." *See* 20 C.F.R. § 402.85. In analyzing whether the disclosure is in the public interest, the SSA considers:

(1)  how the records pertain to the Federal government's operations or activities;
(2)  whether disclosure would reveal any meaningful information about government operations or activities not already known to the public; and
(3)  whether the contribution to public understanding would be significant.

20 C.F.R. § 402.85(b). SSA stated that DFF's "fee waiver request fails to explain with reasonable specificity how the disclosure of the information [DFF] requested will meet the above factors," and thus declined to waive the fee.

## C.  DFF's Appeal

DFF appealed the denial of DFF's fee waiver request on July 25, 2025. In that appeal, DFF explained why its FOIA request would provide significant and meaningful information to the public about government operations and activities. SSA has not timely responded to DFF's appeal. Given SSA's lack of response, DFF submits this letter to reiterate that a full fee waiver is merited here. DFF incorporates by reference the reasoning and support from its July 2, 2025 fee waiver request and July 25 appeal.

## II.  DFF's FOIA Request 2025-FOIA-02239 Merits a Full Fee Waiver.

### A.  The March 13, 2025 memorandum from Acting Deputy Commissioner Doris Diaz to Acting Commissioner Leland Dudek on "Strengthening Identity Assurance for SSA Transactions"

Waiving fees associated with electronic communications between listed DOGE officials and SSA political appointees regarding Topic (1) The March 13, 2025 Diaz memo is in the "public interest" because:



Topic (1) "pertain[s] to the Federal government's operations and activities," 20 C.F.R. § 402.85(b)(2)(i), in that it concerns a memo detailing SSA's plans and proposals to limit certain over-the-phone services purportedly for anti-fraud purposes. Media outlets report that DOGE officials purposefully misconstrued data on the incidence of fraudulent phone calls to the SSA to justify ending certain over-the-phone services, including filing benefits and changing bank information via telephone.[1] Media outlets further report that a March 13, 2025 memo from Acting Deputy Commissioner explained that the proposed changes to phone services would result in increased "foot traffic" to field offices by "approximately 75,000-85,000 additional visitors per week," "longer wait times and processing time," and "disproportionate impact on vulnerable populations," among other predicted impacts and risks.[2]

Obtaining the communications of the listed officials on Topic (1) will "reveal . . . meaningful information about government operations or activities not already known to the public," *id.* § 402.85(b)(2)(ii), because an SSA whistleblower believes the Diaz memo was intended to be a "workaround" for DOGE.[3] After the Washington Post reported that the SSA was considering a proposal to end telephone service for claims processing, the SSA issued a press release saying that "reports in the media that Social Security plans to eliminate telephone services are inaccurate."[4] The SSA whistleblower, however, asserts the March 13 Diaz memo "is DOGE's workaround;" meaning "[t]he agency can technically claim that Americans can still make claims over the phone. But fine print of the new policy means these claims will never be approved without using the internet or making an in-person visit."[5] Communications by the listed officials on Topic (1) will shed light on the accuracy of the SSA whistleblower's account and the Trump Administration's motivations in pursuing policy changes to phone services.

"The contribution to public understanding" of the listed officials' communications on Topic (1) "would be significant, *id.* § 402.85(b)(2)(iii), because media outlets reports that "[o]ver the course of six weeks . . . the phone policy zigged and zagged a half dozen times" causing "panic" among beneficiaries.[6] "Many flocked to field offices to preemptively provide proof of their identities even when they didn't need to"[7] at a time when field offices were already overwhelmed from the

---

[1] Alexandra Berzon et al., "*The Bureaucrat and the Billionaire: Inside DOGE's Chaotic Takeover of Social Security*," The New York Times (June 16, 2025), https://www.nytimes.com/2025/06/16/us/politics/doge-social-security.html (reporting White House officials prevented SSA staff from releasing a statement to correct the misstatements by senior Trump Administration officials about the incidence of fraudulent phone calls to the SSA).

[2] *See* Judd Legum, *EXCLUSIVE: Memo Details Trump Plan to Sabotage the Social Security Administration*, Popular Info. (Mar. 17, 2025), https://popular.info/p/exclusive-memo-details-trump-plan.

[3] *Id.* ("The SSA source believes the Diaz memo 'is DOGE's workaround.'").

[4] *Id.*; *see also* SSA, *Correcting the Record About Social Security Direct Deposit and Telephone Services* (Apr. 18, 2025), https://blog.ssa.gov/correcting-the-record-about-social-security-direct-deposit-and-telephone-services/.

[5] Legum, *supra* note 2.

[6] Eli Hager, "*The Untold Saga of What Happened When DOGE Stormed Social Security*," ProPublica (Sep 8, 2025), https://www.propublica.org/article/inside-doge-social-security-takeover-leland-dudek.

[7] *Id.*



Administration's staffing reductions.[8] It furthers the public interest to shed light on the motivations of Senior officials around policy proposals and changes that caused panic and degradations in vital services.

Finally, DFF notes that it requested a copy of the March 13 Diaz memo in a separate FOIA request, 2025-FOIA-02238. The SSA agreed to waive the fee for that FOIA request. It is, of course, arbitrary and illogical to grant the requested fee waiver there and refuse it here.

### B. Blocked or delayed Social Security payments

Waiving fees associated with electronic communications between listed DOGE officials and SSA political appointees regarding Topic (2) Blocked or delayed Social Security payments is in the "public interest" because:

Topic (2) "pertain[s] to the Federal government's operations and activities," 20 C.F.R. § 402.85(b)(2)(i), in that the administration of benefits payments is the core activity of the SSA. In recent months, there have been numerous accounts that vulnerable groups have feared that their benefits payments may be blocked or delayed. For example, in April "some disability benefit recipients" and seniors "received notice on the My Social Security portal that they were no longer receiving benefits."[9]

Obtaining the communications of the listed officials on Topic (2) will "reveal . . . meaningful information about government operations or activities not already known to the public," *id.* § 402.85(b)(2)(ii), because many of these notices were reportedly the result of SSA system crashes or errors.[10] And media reports suggest that recent policy changes by the Trump Administration have caused an increase in these kinds of system errors.[11] Communications by the listed officials on Topic (2) will shed light on the degree to which Administration officials are aware of the disruptive impact of their policies and how they have responded.

"The contribution to public understanding" of the listed officials' communications on Topic (2) "would be significant, *id.* § 402.85(b)(2)(iii), because media outlets report that the "error messages

---

[8] Berzon, *supra* note 1 ("Higher traffic was poorly timed. At least three dozen field offices were estimated to be losing more than a quarter of their staff.").

[9] Aliss Higham, "*Social Security Responds to Website Crash*," Newsweek (Apr 8, 2025), https://www.newsweek.com/social-security-responds-ssa-website-crash-2056646; *see also* Senator Elizabeth Warren, *Social Security wrongly told disabled people and some seniors their benefits ended, causing alarm*, Newsroom (Apr. 8, 2025), https://www.warren.senate.gov/newsroom/news-coverage/social-security-wrongly-told-disabled-people-and-some-seniors-their-benefits-ended-causing-alarm.

[10] *Id.*

[11] "*Social Security Website Keeps Crashing, as DOGE Demands Cuts to IT Staff: WP*," (Apr. 11, 2025) https://rightsandrecovery.org/e-news-bulletins/2025/04/11/social-security-website-keeps-crashing-as-doge-demands-cuts-to-it-staff-wp/ (explaining that a system error erroneously notified SSI recipients that they were "currently not receiving payments" and caused "dozens of calls . . . from nervous clients who saw the inaccurate message"); *id.* (explaining "[m]any of the [SSA's] network outages appear to be caused by an expanded fraud check system imposed by the DOGE team").



set off widespread panic."[12] It furthers the public interest to shed light on the awareness and reactions of senior officials to service malfunctions and degradations that have caused "widespread panic" among beneficiaries.

### C.     Increased processing and/or wait times

Waiving fees associated with electronic communications between listed DOGE officials and SSA political appointees regarding Topic (3) Increased processing and/or wait times is in the "public interest" because:

Topic (3) "pertain[s] to the Federal government's operations and activities," 20 C.F.R. § 402.85(b)(2)(i), in that processing and wait times are metrics by which the SSA evaluates the efficiency and success of its operations. Media reports suggest that recent policy changes by the Trump Administration at the SSA have resulted in significant increases in processing and wait times.[13] For example, media outlets report that the institution of certain anti-fraud tools have "slowed retirement claim processing by 25%."[14] Media outlets further report that the SSA dropped certain controversial anti-fraud reviews because it had contributed to a backlog of nearly 575,000 pending retirement claims, with around 140,000 languishing for at least 60 days.[15] The average wait time for phone calls to SSA has also reportedly increased substantially.[16]

Obtaining the communications of the listed officials on Topic (2) will "reveal . . . meaningful information about government operations or activities not already known to the public," *id.* § 402.85(b)(2)(ii), because media outlets report that the SSA "has stopped making public 34 real-time performance metrics about things like how long [callers] will have to wait to reach a live person on the phone."[17]

---

[12] The Alliance for Rights and Recovery, "*Social Security Website Keeps Crashing, as DOGE Demands Cuts to IT Staff: WP*," (April 11, 2025). https://rightsandrecovery.org/e-news-bulletins/2025/04/11/social-security-website-keeps-crashing-as-doge-demands-cuts-to-it-staff-wp/.

[13] *See, e.g.*, Legum, *supra* note 1 (excerpting internal SSA memo explaining that proposed changes to phone services would result in increased to "longer wait times and processing time," among other predicted impacts and risks).

[14] Natalie Alms, "*DOGE went looking for phone fraud at SSA — and found almost none*," Nextgov/FCW (May 15, 2025), https://www.nextgov.com/digital-government/2025/05/doge-went-looking-phone-fraud-ssa-and-found-almost-none/405346/.

[15] *See* Tami Luhby, "*Social Security drops controversial anti-fraud review amid growing claims backlog*," CNN (May 17, 2025), https://edition.cnn.com/2025/05/17/politics/social-security-anti-fraud-policy.

[16] *See* Kenneal Patterson, *Trump Admin. Pulls Social Security Wait Times to Hide Bad Customer Service*, The Daily Beast (Jun. 21, 2025), https://www.thedailybeast.com/donald-trumps-social-security-admin-covers-up-customer-service-failures/.

[17] Sarah D. Wire, "*How long will you wait for Social Security help? Why it's anybody's guess*," USA Today (June 26, 2025), https://www.usatoday.com/story/news/politics/2025/06/26/social-security-wait-times-controversy/84334688007; *see also* Rep. Judy Chu, *Letter to SSA Commissioner Bisignano*, House Ways & Means Committee (July 14, 2025), https://larson.house.gov/sites/evo-subsites/larson.house.gov/files/evo-media-document/07_14_2025-chu-w%26m-letter-to-social-security-commissioner-bisignano.pdf.



"The contribution to public understanding" of the listed officials' communications on Topic (3) "would be significant, *id.* § 402.85(b)(2)(iii), because independent investigations suggest that the metrics now available on the SSA's website are inaccurate and misleading. For example, Social Security Commissioner Frank Bisignano is reportedly "fixated on how much time it takes to reach an agent on the SSA's 800 number;" and while he claimed in a July press release that "the average was down to six minutes," "SSA statistics obtained by ProPublica reveal that Bisignano's estimate treats cases in which beneficiaries interact with a chatbot and opt for a callback as 'zero-minute' waits, skewing the average."[18] Communications by the listed officials on Topic (3) will shed light on whether Administration officials are purposefully manipulating or withholding data to conceal poor policy outcomes from the public. This will further the public interest.

## D. Service disruptions

Waiving fees associated with electronic communications between listed DOGE officials and SSA political appointees regarding Topic (4) Service disruptions is in the "public interest" because:

Topic (4) "pertain[s] to the Federal government's operations and activities," 20 C.F.R. § 402.85(b)(2)(i), in that there have been reports of recent major service disruptions that have threatened to derail the SSA's core operations and activities: administering benefits payments. For example, in April, "many of the 7.4 million adults and children receiving monthly benefits under the anti-poverty program known as Supplemental Security Income, or SSI, confronted a jarring message that claimed they were "currently not receiving payments."[19] This message was reportedly an error.[20]

Obtaining the communications of the listed officials on Topic (4) will "reveal . . . meaningful information about government operations or activities not already known to the public," *id.* § 402.85(b)(2)(ii), because as previously noted, media reports suggest that recent policy changes by the Trump Administration have caused an increase in these kinds of system errors.[21] Moreover, "[t]he disruptions are occurring as [the SSA] . . . [is] mov[ing] to lay off large swaths of the workforce in a new phase of downsizing," making it harder for beneficiaries to get help in times of disruption.[22] Communications by the listed officials on Topic (4) will shed light on the degree to which Administration officials are aware of the disruptions caused by their policies and how they have responded.

---

[18] Hager, *supra* note 6.
[19] The Alliance for Rights and Recovery, "*Social Security Website Keeps Crashing, as DOGE Demands Cuts to IT Staff: WP*," (April 11, 2025). https://rightsandrecovery.org/e-news-bulletins/2025/04/11/social-security-website-keeps-crashing-as-doge-demands-cuts-to-it-staff-wp/.
[20] *Supra* note 9.
[21] The Alliance for Rights and Recovery, *supra* note 19 (explaining that a system error erroneously notified SSI recipients that they were "currently not receiving payments" and caused "dozens of calls . . . from nervous clients who saw the inaccurate message"); *id.* (explaining "[m]any of the [SSA's] network outages appear to be caused by an expanded fraud check system imposed by the DOGE team").
[22] *Id.*



"The contribution to public understanding" of the listed officials' communications on Topic (4) "would be significant, *id.* § 402.85(b)(2)(iii), because "[s]ervice disruptions and barriers make it harder for beneficiaries to receive their Social Security benefits – payments which are the primary source of income for more than half of America's seniors."[23] The public has a right to understand the awareness and reactions of senior officials to service disruption that could interfere with "their lifeline payments."[24]

### E.     System outages

Waiving fees associated with electronic communications between listed DOGE officials and SSA political appointees regarding Topic (5) System outages is in the "public interest" because:

Topic (5) "pertain[s] to the Federal government's operations and activities," 20 C.F.R. § 402.85(b)(2)(i), in that the reported recent increase in the crashing of SSA's website undermines the SSA's core operations and activities: administering benefits payments. Media outlets report (citing officials with knowledge) that the SSA's "website has crashed repeatedly in recent weeks, with outages lasting anywhere from 20 minutes to almost a day."[25] Media outlets further report the website outages are disproportionately affecting retirees and disabled people.[26]

Obtaining the communications of the listed officials on Topic (5) will "reveal . . . meaningful information about government operations or activities not already known to the public," *id.* § 402.85(b)(2)(ii), because media reports suggest that the increase in website crashes coincide with "demands from Musk's U.S. DOGE Service [for] a 50 percent cut to the technology division responsible for the website and other electronic access."[27] Moreover, "[m]any of the network outages appear to be caused by an expanded fraud check system imposed by the DOGE team, current and former officials said."[28] Communications by the listed officials on Topic (5) will shed light on the degree to which Administration officials are aware of the disruptions caused by their policies and how they have responded.

"The contribution to public understanding" of the listed officials' communications on Topic (5) "would be significant, *id.* § 402.85(b)(2)(iii), because media outlets report that the system outages are being caused in part by "surge in visitors to the website" who are "nervous that the rapid changes at the agency will compromise their benefits."[29] The "people who are terrified that DOGE is messing with our systems" have a right to understand the awareness and reactions of senior officials to systems outages caused or exacerbated by Trump Administration's policies.[30]

### III.     Conclusion

---

[23] *Supra* note 17.

[24] Shahar Ziv, "*Social Security Could Stop Payments To 170,000 As Musk Targets Fraud*," Forbes (March 18, 2025), https://www.forbes.com/sites/shaharziv/2025/03/18/social-security-may-cut-payments-to-170000-under-musks-crackdown/.

[25] *Supra* note 19.

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.* ("It's the sheer massive volume of freaked-out people.").

[30] *Id.*



Waiving fees associated with 2025-FOIA-02239 will further the "public interest." DFF asks that SSA grant a full waiver of any fees associated with FOIA request 2025-FOIA-02239.

/s/ Skye Perryman

Skye Perryman
President & CEO
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043



July 25, 2025

**VIA Electronic Delivery**

Executive Director for the Office of Privacy and Disclosure
Social Security Administration
G-401 WHR
6401 Security Boulevard
Baltimore, MD 21235
FOIA.Public.Liaison@ssa.gov

**Re: Appeal of fee waiver denial, supplementary information, and status update for Freedom of Information Act Request #2025-FOIA-02239**

Dear FOIA Appeal Officer:

We write in response to Social Security Administration's ("SSA") recent denial of Democracy Forward Foundation's ("DFF") request for a fee waiver with respect to its July 2, 2025 Freedom of Information Act (FOIA) request for records of communications between Department of Government Efficiency ("DOGE") affiliates and SSA political appointees regarding the "Strengthening Identity Assurance for SSA Transactions" memo and service disruptions. The request sought:

> All electronic communications (including emails, email attachments, complete email chains, calendar invitations, or attachments thereto, as well as any text messages or messages sent on messaging platforms such as Slack, Microsoft Teams, WhatsApp, Signal, or GChat) concerning (1) the March 13, 2025 memorandum from Acting Deputy Commissioner Doris Diaz to Acting Commissioner Leland Dudek on "Strengthening Identity Assurance for SSA Transactions;"(2) blocked or delayed Social Security payments; (3) increased processing and/or wait times; (4) service disruptions; or (5) system outages, sent or received by any government official listed below:

> > Officials:
> > a. any present or former employee or affiliate of the "Department of Government Efficiency" ("DOGE") or the U.S. "DOGE" Service, including but not limited to Steve Davis, Antonio Gracias, Akash Bobba, Ethan Shaotran, Edward Coristine and Aram Moghaddassi;



     b. any present or former SSA political appointee, including but not limited to Leland Dudek, Frank Bisignano, Michael Russo, and Scott Coulter;

This request seeks records from March 1, 2025 until the date of the search.

On July 18, 2025, SSA responded to DFF's request by denying the organization's request for a fee waiver. SSA's response indicates that SSA believes the requested information would not provide significant and meaningful information to the public about government operations. We respectfully disagree, both on the basis of the record originally before the agency and based on recent developments.

As explained below,the disclosure of the requested records *would* clarify the public's understanding of the decision-making process, analysis, and influences that contributed to the SSA instituting agency-wide changes that can potentially result in blocked payments and service disruptions.

In DFF's original request, we explained that the requested records would make a significant contribution to the public understanding of the Social Security program, which currently benefits 73 million individuals. Thus, policy changes that impact this program have a far-reaching impact. A recent analysis report by the Center on Budget and Policy Priorities estimates that the new phone service restrictions will force people to make over 1.93 million additional trips and that 13.5 million seniors live more than an hour's drive roundtrip from their nearest SSA office.[1] Given that these agency-wide policy changes will have a significant impact on the lives and livelihood of many Americans, the public would benefit from and deserves to understand the rationalization behind the March 13 memo. The disclosure of communications regarding these changes will enhance public understanding of this significant policy change.

Furthermore, to understand the influences behind these policy changes, disclosure of communications with DOGE affiliates is necessary. Earlier this year, DOGE proposed closing 47 SSA field offices[2] and implementing workforce reductions. Together with the March 13 memo, these actions demonstrate a pattern of SSA decisions that create barriers for millions of Americans who rely on SSA services. In light of DOGE's activities at SSA and throughout the government, the disclosure of communications between these affiliates with SSA political

---

[1] Claire Zippel and Devin O'Connor, "*Social Security Service Restrictions Burden Seniors with Long, Unnecessary Travel,*" Center on Budget and Policy Priorites (June 13, 2025), https://www.cbpp.org/research/social-security/social-security-service-restrictions-burden-seniors-with-long-unnecessary

[2] Meg Kinnard, "*A list of the Social Security offices across the US expected to close this year,*" Associated Press (March 19, 2025), https://apnews.com/article/social-security-offices-closures-doge-trump-b2b1a5b2ba4fb968abc3379bf90715ff



appointees will shed light on how DOGE may have influenced the decision-making process behind producing the March 13 memo.

Finally, the requested records will reveal meaningful information about government operations and/or activities not already known to the public because the rollout of these changes was mired in confusion[3] and reports suggest the Trump Administration directed the SSA to undertake these changes in a purposefully nontransparent manner.[4]

For these reasons, DFF's request for the records of communications between DOGE affiliates and SSA political appointees regarding these policy changes are likely to contribute to significant and meaningful public understanding. We ask you consider this additional information in reconsidering the agency's fee waiver denial.

Additionally, we ask that SSA provide an update on its processing, including whether the agency has yet completed a search and when it will issue a final response.

*/s/ Skye Perryman*
Skye Perryman
President & CEO
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043

---

[3] *See, e.g.*, SSA, *Correcting the Record About Social Security Direct Deposit and Telephone Services* (Apr. 18, 2025), https://blog.ssa.gov/correcting-the-record-about-social-security-direct-deposit-and-telephone-services/.
[4] Alexandra Berzon et al., *The Bureaucrat and the Billionaire: Inside DOGE's Chaotic Takeover of Social Security*, The New York Times (June 16, 2025), https://www.nytimes.com/2025/06/16/us/politics/doge-social-security.html (reporting "White House officials ultimately demanded that [Acting Commissioner Dudek]  halt many of [his] transparency initiatives").



# SOCIAL SECURITY

Refer to:
S9H: 2025-FOIA-02239

July 18, 2025

Ms. Skye Perryman
Democracy Forward Foundation
P.O. Box 34553
Washington, DC  20043
foia@democracyforward.org

Dear Ms. Perryman:

I am responding to your request for a fee waiver concerning your July 2, 2025 Freedom of Information Act (FOIA) request to the Social Security Administration (SSA) for the following, from March 1, 2025 until the date of the search:

> "All electronic communications (including emails, email attachments, complete email chains, calendar invitations, or attachments thereto, as well as any text messages or messages sent on messaging platforms such as Slack, Microsoft Teams, WhatsApp, Signal, or GChat) concerning (1) the March 13, 2025 memorandum from Acting Deputy Commissioner Doris Diaz to Acting Commissioner Leland Dudek on "Strengthening Identity Assurance for SSA Transactions;" (2) blocked or delayed Social Security payments; (3) increased processing and/or wait times; (4) service disruptions; or (5) system outages, sent or received by any government official listed below:

> Officials:
> a.  any present or former employee or affiliate of the "Department of Government Efficiency" ("DOGE") or the U.S. "DOGE" Service, including but not limited to Steve Davis, Antonio Gracias, Akash Bobba, Ethan Shaotran, Edward Coristine and Aram Moghaddassi.
> b.  any present or former SSA political appointee, including but not limited to Leland Dudek, Frank Bisignano, Michael Russo, and Scott Coulter."

I reviewed your request for a fee waiver and I have decided not to waive or reduce the fee.  We may waive or reduce the fee under our regulation at 20 C.F.R. § 402.85 if we find that waiver is in the public interest.  We make this determination if we find that disclosure of the information meets both tests below:

- it is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government, and
- it is not primarily in the requester's commercial interest.

Our regulation (20 C.F.R. § 402.85(b)) lists factors we consider in analyzing whether disclosure is in the public interest. These factors include:

- how the records pertain to the Federal government's operations or activities,
- whether disclosure would reveal any meaningful information about government operations or activities not already known to the public, and
- whether the contribution to public understanding would be significant.

Your fee waiver request fails to explain with reasonable specificity how the disclosure of the information you requested will meet the above factors, and I have not otherwise found that release of the records requested would meet the abovementioned factors. Accordingly, applying the standards listed above, I cannot waive the fee.

We are charging you fees for your request under section 1106(c) of the Social Security Act (Act) (42 U.S.C. § 1306(c)). Because we have invoked section 1106(c), the FOIA fee provisions in 5 U.S.C. § 552 are not applicable to your request. Section 1106(c) applies notwithstanding FOIA and provides that we charge the full cost for search and reproduction of records when the request is for a purpose not directly related to the administration of a program under the Act (20 C.F.R. § 402.80), *regardless* of the fee provisions in FOIA. We determined that your request is not directly related to the administration of the Act. Accordingly, we will charge you for the full cost to provide the requested information (42 U.S.C. § 1306(c); 20 C.F.R. § 402.80).

We will send further correspondence when we determine what fees, if any, apply to your request.

Please note that this response is limited to the determination on your fee waiver request; our office is still assessing your request as phrased and will provide subsequent correspondence on that determination.

If you have questions or would like further assistance with your request, you may contact our FOIA Public Liaison by email at FOIA.Public.Liaison@ssa.gov; by phone at 410-965-1727, by choosing Option 2; or facsimile at 833-795-0132.

You may also contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration for dispute resolution services. OGIS is an entity outside of SSA that offers mediation services to resolve disputes between FOIA requesters and Federal agencies. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road – OGIS, College Park, MD 20740-6001; email at ogis@nara.gov; telephone at 202-741-5770; toll-free at 1-877-684-6448; or facsimile at 202-741-5769.

If you disagree with this decision, you may file a written appeal with the Executive Director for the Office of Privacy and Disclosure, Social Security Administration, G-401 WHR, 6401 Security Boulevard, Baltimore, MD 21235. Your appeal must be postmarked or electronically transmitted to FOIA.Public.Liaison@ssa.gov within 90 days of the date of our response to your initial request. Please mark the envelope or subject line with "Freedom of Information Appeal."

Thank you for your request.

Sincerely,

Jennifer Karangelen
Acting Freedom of Information Officer



July 2, 2025

**VIA ELECTRONIC DELIVERY**

Social Security Administration
Office of Privacy and Disclosure
G-401 WHR 6401 Security Boulevard
Baltimore, Maryland 21235
Via online portal

**Re: Freedom of Information Action Request**

Dear FOIA Officer:

Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552, Democracy Forward Foundation submits this request for records.

*Records Requested*

Democracy Forward Foundation ("DFF") requests that the Social Security Administration ("SSA") produce the following within twenty (20) business days:

> All electronic communications (including emails, email attachments, complete email chains, calendar invitations, or attachments thereto, as well as any text messages or messages sent on messaging platforms such as Slack, Microsoft Teams, WhatsApp, Signal, or GChat) concerning (1) the March 13, 2025 memorandum from Acting Deputy Commissioner Doris Diaz to Acting Commissioner Leland Dudek on "Strengthening Identity Assurance for SSA Transactions;"(2) blocked or delayed Social Security payments; (3) increased processing and/or wait times; (4) service disruptions; or (5) system outages, sent or received by any government official listed below:
>
> > Officials:
> > a. any present or former employee or affiliate of the "Department of Government Efficiency" ("DOGE") or the U.S. "DOGE" Service, including but not limited to Steve Davis, Antonio Gracias, Akash Bobba, Ethan Shaotran, Edward Coristine and Aram Moghaddassi;
> > b. any present or former SSA political appointee, including but not limited to Leland Dudek, Frank Bisignano, Michael Russo, and Scott Coulter;



This request seeks records from March 1, 2025 until the date of the search.

***Scope of Search***

FOIA requires agencies to disclose information, with only limited exceptions. 5 U.S.C. § 552(a)(8)(A). In the event that any of the requested documents cannot be disclosed in their entirety, we request that you release any material that can be reasonably segregated. *See* 5 U.S.C. § 552(b). Should any documents or portions of documents be withheld, we further request that you state with specificity the description of the document to be withheld and the legal and factual grounds for withholding any documents or portions thereof in an index, as required by *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). Should any document include both disclosable and non-disclosable material that cannot reasonably be segregated, we request that you describe what proportion of the information in a document is non-disclosable and how that information is dispersed throughout the document. *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

If requested records are located in, or originated in, another agency, department, office, installation or bureau, please refer this request or any relevant portion of this request to the appropriate entity.

To the extent that the records are readily reproducible in an electronic format, we would prefer to receive the records in that format. However, if certain records are not available in that format, we are willing to accept the best available copy of each such record.

Please respond to this request in writing within 20 working days as required under 5 U.S.C. § 552(a)(6)(A)(i). If all of the requested documents are not available within that time period, we request that you provide us with all requested documents or portions of documents that are available within that time period.

***Request for Fee Waiver***

Pursuant to 42 U.S.C. § 1306 and your agency's regulations, DFF requests a waiver of all fees associated with processing records for this request. Your regulations provide for documents to be furnished to requesters at no fee or reduced fees when "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 20 C.F.R. § 402.85.

When assessing a request for a fee waiver, your agency considers the following factors: (i) how the records pertain to the Federal government's operations or activities; (ii) whether disclosure would reveal any meaningful information about government operations or activities



not already known to the public; and (iii) whether the contribution to public understanding would be significant. *Id.* § 402.85(2). Considering these factors, DFF's request merits a fee waiver.

First, the requested records pertain to the Federal government's operations and activities because they concern changes contemplated and made by the SSA to the administration of the Social Security program as well as the impact of those changes. Second, the requested records will reveal meaningful information about government operations and/or activities not already known to the public because the rollout of these changes was mired in confusion[1] and reports suggest the Trump Administration directed the SSA to undertake these changes in a purposefully nontransparent manner.[2] Finally, the contribution of DFF's request to the public understanding of Social Security will be significant because Social Security is a program that currently benefits 73 million individuals[3] and agency data shows that, in light of the chaos emanating from the SSA, "more Americans have claimed their Social Security benefits earlier," "sacrificing higher payments down the road for financial certainty now."[4] DFF intends to publicize records DFF receives to contribute significantly to the public's understanding of how this Administration's policies are impacting the benefits that Social Security recipients have earned.

To this latter point, DFF has a demonstrated ability to disseminate information of public interest requested through FOIA. When DFF obtains materials through FOIA requests that are of significant public interest, DFF's communications staff regularly works to ensure that these materials and their contents are featured in press articles educating the public about the operation of government; many articles feature additional commentary and analysis from DFF staff about those materials and their relevance to policy issues of public interest. Indeed, records received by DFF have previously formed the basis of news reports.[5]

---

[1] *See, e.g.*, SSA, *Correcting the Record About Social Security Direct Deposit and Telephone Services* (Apr. 18, 2025), https://blog.ssa.gov/correcting-the-record-about-social-security-direct-deposit-and-telephone-ser vices/.

[2] Alexandra Berzon et al., *The Bureaucrat and the Billionaire: Inside DOGE's Chaotic Takeover of Social Security*, The New York Times (June 16, 2025), https://www.nytimes.com/2025/06/16/us/politics/doge-social-security.html (reporting "White House officials ultimately demanded that [Acting Commissioner Dudek] halt many of [his] transparency initiatives").

[3] *See* Molly Weston Williamson, *Cuts to the Social Security Administration Threaten Millions of Americans' Retirement and Disability Benefits*, Ctr. for Am. Progress (Mar. 12, 2025), https://www.americanprogress.org/article/cuts-to-the-social-security-administration-threaten-mill ions-of-americans-retirement-and-disability-benefits/.

[4] *Supra* note 4.

[5] *See, e.g.*, Alexander Nazaryan, *Why did right-wing troll Charles C. Johnson meet with Commerce Secretary Wilbur Ross?*, Yahoo News (May 14, 2019),



https://news.yahoo.com/why-did-rightwing-troll-charles-c-johnson-want-to-meet-with-commerce-secretary-wilbur-ross-090000636.html; Derek Kravitz and Jack Gillum, *"Happy to Do It": Emails Show Current FAA Chief Coordinated With Ex-Lobbyist Colleagues on Policy*, ProPublica (Mar. 27, 2019), https://www.propublica.org/article/dan-elwell-current-faa-chief-coordinated-with-ex-lobbyist-colleagues-on policy; Hamid Aleaziz, *Emails Show US Border Officials Didn't Receive "Zero Tolerance" Guidance Until After the Policy Was Enacted*, Buzzfeed News (Feb. 28, 2019), https://www.buzzfeednews.com/article/hamedaleaziz/zero-tolerance-policy-guidance-dhs-family-separation; Jonathan Cohn and Jeffrey Young, *Emails Show Trump Administration Was Told Obamacare Ad Cuts Could Hurt Enrollment*, Huffpost (Dec. 17, 2018), https://www.huffingtonpost.com/entry/trump-verma-obamacare-advertising-cut_us_5c115061e4b084b082ff8dba; Madison Pauly, *When the Biggest Prison Company Complained About a California Sanctuary Law, ICE Listened*, Mother Jones (Dec. 7, 2018), https://www.motherjones.com/politics/2018/12/geo-memo-private-prison-california-immigration/; Eliza Rellman, *'Just answer the question and kill this story': In internal emails, Heather Nauert criticized Rex Tillerson's refusal to deny reports that he called Trump a 'moron,'* Business Insider (Nov. 2, 2018), https://www.businessinsider.com/heather-nauert-rex-tillerson-trump-moron-2018-11; Rebecca Klein, *Lawsuit Accuses Betsy DeVos And Her Deputies Of Being Motivated By Sexism*, HuffPost (Oct. 31, 2018), https://m.huffpost.com/us/entry/us_5bd9ff6ee4b01abe6a1ad4a9; Nick Penzenstadler, *A year after Vegas shooting, ATF emails reveal blame, alarm over bump stocks*, USA Today (Oct. 1, 2018), https://www.usatoday.com/story/news/2018/10/01/year-after-vegas-shooting-atf-emails-reveal-blame-alarm-over bump-stocks/1432137002/; Jessica Kwong, *Ivanka Trump was more than complicit in Obama equal pay rollback she had a hand in it, watchdog alleges*, Newsweek (Aug. 29, 2018), https://www.newsweek.com/ivanka-trump-equal-pay-complicit-obama-1093833; Vera Bergengruen, *New Emails Show What Happens When The Pentagon Has To Scramble To Catch Up To Trump*, Buzzfeed News (July 25, 2018), https://www.buzzfeednews.com/article/verabergengruen/these-emails-show-what-happens-when-the-white-house keeps; Erin Dooley, *Exclusive: Former for-profit college executive shaped Education Department policy that could benefit former employers: Documents*, ABC News (May 15, 2017), https://abcnews.go.com/US/exclusive-profit college-executive-shaped-education-department-policy/story?id=55108981; Heidi Przybyla, *Notes, emails reveal Trump appointees' war to end HHS teen pregnancy program*, NBC News (Mar. 20, 2018), https://www.nbcnews.com/politics/politics-news/notes-emails-reveal-trump-appointees-war-end-hhs-teen pregnancy-n857686; Dominic Holden, *Documents Show The Trump Administration Approved Bump Stocks Before It Opposed Them*, Buzzfeed News (Mar. 22, 2018), https://www.buzzfeednews.com/article/dominicholden/trump administration-bump-stocks; Bernard Condon, *Trump Advisor Denies He Cheered End of Tunnel Funding Deal*, Associated Press (Feb. 13, 2018), *available at*



Democracy Forward Foundation is not filing this request to further any commercial interest, and any information obtained by Democracy Forward Foundation as a result of this request and disclosed will be disclosed at no cost.

If the request for a waiver is denied, we are willing to pay all reasonable fees incurred for searching and duplicating records in responding to this request, up to $100. If the costs of responding to this request should exceed that amount, please contact us before incurring costs exceeding that amount.

### Conclusion

If you need clarification as to the scope of the request, have any questions, or foresee any obstacles to releasing fully the requested records within 20 business days, please contact me as soon as possible at foia@democracyforward.org.

We appreciate your assistance and look forward to your prompt response.

Sincerely,

*/s/ Skye Perryman*
Skye Perryman
President & CEO
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043

---

https://www.usnews.com/news/business/articles/2018-02-13/trump adviser-denies-he-cheered-end-of-tunnel-funding-deal; Celeste Katz, *Interior Department tapped wildfire preparedness funds for Ryan Zinke helicopter tour*, Newsweek (Dec. 29, 2017), https://www.newsweek.com/ryan zinke-interior-department-helicopters-wildfires-757857.

Exhibit 3



October 10, 2025

**VIA ELECTRONIC DELIVERY**

Social Security Administration
Office of Privacy and Disclosure
G-401 WHR 6401 Security Boulevard
Baltimore, Maryland 21235
FOIA.Public.Liaison@ssa.gov

**Re: Constructive Denial of DFF's Fee Waiver Appeal for FOIA Request 2025-FOIA-02240**

To FOIA Officials:

Democracy Forward Foundation ("DFF") writes to follow-up on its appeal of the Social Security Administration's ("SSA") denial of a fee waiver in connection with DFF's FOIA request 2025-FOIA-02240. DFF appealed this denial on August 6, 2025. The statutory deadline to adjudicate DFF's appeal has now passed. DFF writes to reiterate that a full fee waiver is merited for this request.

## I.      Background

### A.      DFF's FOIA Request

DFF's FOIA request 2025-FOIA-02240 seeks records concerning disruptions and degradations in SSA's administration of its core programs and services caused by the Trump Administration's enactment of certain policy changes and work force reductions. Specifically, DFF's request 2025-FOIA-02240 seeks:

> All electronic communications (including emails, email attachments, complete email chains, calendar invitations, or attachments thereto, as well as any text messages or messages sent on messaging platforms such as Slack, Microsoft Teams, WhatsApp, Signal, or GChat) **sent** by (A) any government official listed below and containing (B) any of the following key terms.
>
> A.  Officials:
>       a.  any present or former employee or affiliate of the "Department of Government Efficiency" ("DOGE") or the U.S. "DOGE" Service, including but not limited to Steve Davis, Antonio Gracias, Akash Bobba, Ethan Shaotran, Edward Coristine and Aram Moghaddassi;
>       b.  any present or former SSA political appointee, including but not limited to Leland Dudek, Frank Bisignano, Michael Russo, and Scott Coulter.



B. <u>Key terms:</u>
  a. Fraud
  b. Delay
  c. "Dead people"
  d. DMF
  e. "DHS data"
  f. "Missed payments"
  g. "Wait time"
  h. "Overwhelmed"
  i. "Field office"
  j. "RIF"
  k. "Identity verification"
  l. "ID verification"
  m. "Banking information"
  n. "Bank information"
  o. "Direct deposit"

This request seeks records from March 1, 2025, until the date of the search.

DFF requested a waiver of all fees associated with processing records for this request on the grounds that "disclosure of the information [DFF seeks] is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 20 C.F.R. § 402.85.

**B.      SSA's Response**

On July 29, 2025, SSA denied DFF's fee waiver request. SSA explained that it may waive or reduce fees associated with FOIA requests if it finds that waiver is in the "public interest." *See* 20 C.F.R. § 402.85. In analyzing whether the disclosure is in the public interest, the SSA considers:

(1) how the records pertain to the Federal government's operations or activities;
(2) whether disclosure would reveal any meaningful information about government operations or activities not already known to the public; and
(3) whether the contribution to public understanding would be significant.

20 C.F.R. § 402.85(b). SSA stated that DFF's "fee waiver request fails to explain with reasonable specificity how the disclosure of the information [DFF] requested will meet the above factors," and thus declined to waive the fee.

**C.      DFF's Appeal**

DFF appealed the denial of DFF's fee waiver request on August 6, 2025. In that appeal, DFF explained why its FOIA request would provide significant and meaningful information to the public about government operations and activities. SSA has not timely responded to DFF's appeal. Given SSA's lack of response, DFF submits this letter to reiterate that a full fee waiver is merited here. DFF incorporates by reference the reasoning and support from its July 2, 2025 fee waiver request and August 6 appeal.



## II. DFF's FOIA Request 2025-FOIA-02240 Merits a Full Fee Waiver.

DFF's FOIA request 2025-FOIA-02240 provides search keywords that DFF assesses are likely to identify records, broadly speaking, concerning disruptions and degradations in SSA's administration of its core programs and services caused by the Trump Administration's enactment of certain policy changes and work force reductions. Particular clusters of terms are intended to identify records concerning specific Government operations or activities, as laid out below:

### A. Cluster (A): Fraud; "Dead People;" "DMF;" "DHS data"

Waiving fees associated with electronic communications between listed DOGE officials and SSA political appointees regarding Cluster (A) of terms is in the "public interest" because:

Cluster A "pertain[s] to the Federal government's operations and activities," 20 C.F.R. § 402.85(b)(2)(i), in that these terms seek to identify communication records concerning the Trump Administration's claims of rampant fraud in the Social Security program. Media outlets report that DOGE officials purposefully misconstrued data to suggest that significant numbers of dead and undocumented people were receiving Social Security benefits to justify changes in the administration of the Social Security program.[1]

Obtaining communications of the listed officials regarding Cluster (A) will "reveal . . . meaningful information about government operations or activities not already known to the public," *id.* § 402.85(b)(2)(ii), because media outlets report DOGE officials knew their claims of rampant fraud were inaccurate. For example, media outlets report DOGE official Akash Bobba "knew [dead] people weren't actually receiving benefits and tried to tell Musk so, to no avail."[2] Indeed, DOGE officials reportedly "acknowledged in an internal memo that payments were not being made" to dead people.[3] Moreover, several SSA employees reportedly informed media outlets that certain antifraud measures were more "about cracking down on undocumented immigrants [than] about program integrity."[4] Communications by the listed officials concerning the topics implicated by Cluster (A) will shed light on whether the Administration purposefully misled the public in implementing changes to the Social Security program.

"The contribution to public understanding" of the listed officials' communications regarding Cluster (A) "would be significant, *id.* § 402.85(b)(2)(iii), because the policy changes—ostensibly anti-fraud measures—implemented on the basis of the Administration's claims of fraud have been

---

[1] Alexandra Berzon et al., "*The Bureaucrat and the Billionaire: Inside DOGE's Chaotic Takeover of Social Security,*" The New York Times (June 16, 2025), https://www.nytimes.com/2025/06/16/us/politics/doge-social-security.html; Shahar Ziv, "*Social Security Could Stop Payments To 170,000 As Musk Targets Fraud,*" Forbes (March 18, 2025), https://www.forbes.com/sites/shaharziv/2025/03/18/social-security-may-cut-payments-to-170000-under-musks-crackdown/ ("Several SSA employees admitted . . . that 'the proposal may be wrapped up in the administration's immigration policies.'").

[2] Eli Hager, "*The Untold Saga of What Happened When DOGE Stormed Social Security,*" ProPublica (Sep 8, 2025), https://www.propublica.org/article/inside-doge-social-security-takeover-leland-dudek.

[3] Berzon, *supra* note 1.

[4] Ziv, *supra* note 1.



credited with disrupting and degrading the SSA's administration of programs and services.[5] It furthers the public interest to shed light on the motivations and veracity of senior officials in implementing policies that have led to degradations in vital services.

### B. Cluster (B): Delay, Missed Payments

Waiving fees associated with electronic communications between listed DOGE officials and SSA political appointees regarding Cluster (B) of terms is in the "public interest" because:

Cluster (B) "pertain[s] to the Federal government's operations and activities," 20 C.F.R. § 402.85(b)(2)(i), in that the administration of benefits payments is the core activity of the SSA. In recent months, there have been numerous accounts that vulnerable groups have feared that their benefits payments may be blocked or delayed. For example, in April "some disability benefit recipients" and seniors "received notice on the My Social Security portal that they were no longer receiving benefits."[6]

Obtaining communications of the listed officials regarding Cluster (B) will "reveal . . . meaningful information about government operations or activities not already known to the public," *id.* § 402.85(b)(2)(ii), because many of these notices were reportedly sent as a result of SSA system crashes or errors.[7] And media reports suggest that recent policy changes by the Trump Administration have caused an increase in these kinds of system errors.[8] Communications by the listed officials regarding Cluster (B) will shed light on the degree to which Administration officials are aware of the disruptive impact of their policies and how they have responded.

---

[5] *See, e.g.*, Natalie Alms, "*DOGE went looking for phone fraud at SSA — and found almost none,*" Nextgov/FCW (May 15, 2025), https://www.nextgov.com/digital-government/2025/05/doge-went-looking-phone-fraud-ssa-and-found-almost-none/405346/ (reporting anti-fraud tool "has slowed retirement claim processing by 25% and led to a 'degradation of public service'"); The Alliance for Rights and Recovery, "*Social Security Website Keeps Crashing, as DOGE Demands Cuts to IT Staff: WP,*" (Apr. 11, 2025) https://rightsandrecovery.org/e-news-bulletins/2025/04/11/social-security-website-keeps-crashing-as-doge-demands-cuts-to-it-staff-wp/ (explaining "[m]any of the [SSA's] network outages appear to be caused by an expanded fraud check system imposed by the DOGE team").
[6] Aliss Higham, "*Social Security Responds to Website Crash,*" Newsweek (Apr 8, 2025), https://www.newsweek.com/social-security-responds-ssa-website-crash-2056646; *see also* Senator Elizabeth Warren, *Social Security wrongly told disabled people and some seniors their benefits ended, causing alarm*, Newsroom (Apr. 8, 2025), https://www.warren.senate.gov/newsroom/news-coverage/social-security-wrongly-told-disabled-people-and-some-seniors-their-benefits-ended-causing-alarm.
[7] *Supra* note 6.
[8] "*Social Security Website Keeps Crashing, as DOGE Demands Cuts to IT Staff: WP,*" (Apr. 11, 2025) https://rightsandrecovery.org/e-news-bulletins/2025/04/11/social-security-website-keeps-crashing-as-doge-demands-cuts-to-it-staff-wp/ (explaining that a system error erroneously notified SSI recipients that they were "currently not receiving payments" and caused "dozens of calls . . . from nervous clients who saw the inaccurate message"); *id.* (explaining "[m]any of the [SSA's] network outages appear to be caused by an expanded fraud check system imposed by the DOGE team").



"The contribution to public understanding" of the listed officials' communications regarding Cluster (B) "would be significant, *id.* § 402.85(b)(2)(iii), because media outlets report that the "error messages set off widespread panic."[9] It furthers the public interest to shed light on the awareness and reactions of senior officials to service malfunctions and degradations that have caused "widespread panic" among beneficiaries.

### C. Cluster (C): Wait time, Overwhelmed

Waiving fees associated with electronic communications between listed DOGE officials and SSA political appointees regarding Cluster (C) of terms is in the "public interest" because:

Cluster (C) "pertain[s] to the Federal government's operations and activities," 20 C.F.R. § 402.85(b)(2)(i), in that the terms "wait time" and "overwhelmed" are geared toward evaluating the efficiency and success of SSA's customer service operations. Media reports suggest that recent policy changes by the Trump Administration at the SSA have resulted in significant increases in wait times for customers.[10] Moreover, reportedly, "[a] surge in visitors to [the SSA's] website is overwhelming the computer system as customers — nervous that the rapid changes at the agency will compromise their benefits — download their benefit and earnings statements and attempt to file claims."[11]

Obtaining communications of the listed officials regarding Cluster (C) will "reveal . . . meaningful information about government operations or activities not already known to the public," *id.* § 402.85(b)(2)(ii), because media outlets report that the SSA "has stopped making public 34 real-time performance metrics about things like how long [callers] will have to wait to reach a live person on the phone."[12] Moreover, media outlet report that White House officials directed former Acting Social Security Commissioner Leland Dudek to remove videos of weekly operational meetings from YouTube discussing operational challenges, like "network crashes."[13]

---

[9] The Alliance for Rights and Recovery, "*Social Security Website Keeps Crashing, as DOGE Demands Cuts to IT Staff: WP*," (April 11, 2025). https://rightsandrecovery.org/e-news-bulletins/2025/04/11/social-security-website-keeps-crashing-as-doge-demands-cuts-to-it-staff-wp/.

[10] *See, e.g.*, Judd Legum, *EXCLUSIVE: Memo Details Trump Plan to Sabotage the Social Security Administration*, Popular Info. (Mar. 17, 2025), https://popular.info/p/exclusive-memo-details-trump-plan (excerpting internal SSA memo explaining that proposed changes to over-the-phone services would result in increased to "longer wait times and processing time," among other predicted impacts and risks); *see* Kenneal Patterson, *Trump Admin. Pulls Social Security Wait Times to Hide Bad Customer Service*, The Daily Beast (Jun. 21, 2025), https://www.thedailybeast.com/donald-trumps-social-security-admin-covers-up-customer-service-failures/.

[11] The Alliance for Rights and Recovery, *supra* note 9.

[12] Sarah D. Wire, "*How long will you wait for Social Security help? Why it's anybody's guess*," USA Today (June 26, 2025), https://www.usatoday.com/story/news/politics/2025/06/26/social-security-wait-times-controversy/84334688007; *see also* Rep. Judy Chu, *Letter to SSA Commissioner Bisignano*, House Ways & Means Committee (July 14, 2025), https://larson.house.gov/sites/evo-subsites/larson.house.gov/files/evo-media-document/07_14_2025-chu-w%26m-letter-to-social-security-commissioner-bisignano.pdf.

[13] The Alliance for Rights and Recovery, *supra* note 9.



"The contribution to public understanding" of the listed officials' communications on Cluster (C) "would be significant, *id.* § 402.85(b)(2)(iii), because independent investigations suggest that the metrics now available on the SSA's website are inaccurate and misleading. For example, Social Security Commissioner Frank Bisignano is reportedly "fixated on how much time it takes to reach an agent on the SSA's 800 number;" and while he claimed in a July press release that "the average [wait time] was down to six minutes," "SSA statistics obtained by ProPublica reveal that Bisignano's estimate treats cases in which beneficiaries interact with a chatbot and opt for a callback as 'zero-minute' waits, skewing the average."[14] Communications by the listed officials on Cluster (C) will shed light on whether Administration officials are purposefully manipulating or withholding data to conceal poor policy and operational outcomes from the public.

Moreover, media outlets report that the SSA's systems are being overwhelmed in part by a "surge in visitors to the website" who are "nervous that the rapid changes at the agency will compromise their benefits."[15] Because people "are terrified that DOGE is messing with our systems," it will further the public interest to shed light on the awareness and reactions of senior officials to system outages and other negative operational outcomes caused or exacerbated by their policy changes.

> **D.      Cluster (D): Fraud, "Field office," "Identity verification," "ID verification," "Banking information," "Bank information," "Direct deposit"**

Waiving fees associated with electronic communications between listed DOGE officials and SSA political appointees regarding Cluster (D) of terms is in the "public interest" because:

Cluster (D) "pertain[s] to the Federal government's operations and activities," 20 C.F.R. § 402.85(b)(2)(i), in that these terms concern certain changes contemplated and/or implemented to over-the-phone services at SSA ostensibly for anti-fraud purposes. On March 18, 2025, SSA announced plans to limit certain over-the-phone services. The proposed changes implicated procedures for beneficiaries to change their bank information,[16] including their direct deposit information,[17] as well as to verify their identities.[18] The rollout of these plans were mired in confusion,[19] and "[o]ver the course of six weeks . . . the phone policy zigged and zagged a half dozen times."[20]

Obtaining communications of the listed officials regarding Cluster (D) will "reveal . . . meaningful information about government operations or activities not already known to the public," *id.* § 402.85(b)(2)(ii), because media outlets report that DOGE officials purposefully misconstrued

---

[14] Hager, *supra* note 2.
[15] The Alliance for Rights and Recovery, *supra* note 9 ("It's the sheer massive volume of freaked-out people.").
[16] Legum, *supra* note 10.
[17] Higham, *supra* note 6.
[18] *Id.*
[19] *See, e.g.*, SSA, *Correcting the Record About Social Security Direct Deposit and Telephone Services* (Apr. 18, 2025), https://blog.ssa.gov/correcting-the-record-about-social-security-direct-deposit-and-telephone-services/.
[20] Hager, *supra* note 2.



data on the incidence of fraudulent phone calls to the SSA to justify the proposed changes to phone services.[21] Media outlets further report that senior officials were informed via internal memo that the proposed changes would result in increased "foot traffic" to field offices by "approximately 75,000-85,000 additional visitors per week," "longer wait times and processing time," and "disproportionate impact on vulnerable populations," among other predicted impacts and risks.[22] Communications by the listed officials regarding Cluster (D) will shed light on the degree to which Administration officials were aware of the disruptive impact of their policies and how they responded.

"The contribution to public understanding" of the listed officials' communications on Cluster (D) "would be significant, *id.* § 402.85(b)(2)(iii), because media outlets reports that the proposed changes to the phone policy caused "panic" among beneficiaries.[23] "Many flocked to field offices to preemptively provide proof of their identities even when they didn't need to"[24] at a time when field offices were already overwhelmed from the Administration's staffing reductions.[25] It furthers the public interest to shed light on the motivations and veracity of senior officials in implementing policies that caused both public panic and degradations in the SSA's provision of vital programs and services.

### E. Cluster (E): Overwhelmed, RIF, Field Office

Waiving fees associated with electronic communications between listed DOGE officials and SSA political appointees regarding Cluster (E) of terms is in the "public interest" because:

Cluster (E) "pertain[s] to the Federal government's operations and activities," 20 C.F.R. § 402.85(b)(2)(i), in that the terms concern staffing shortages and office closures that are a result of the Trump Administration's personnel policies and are reportedly undermining the SSA's operations. The SSA has announced plans to cut 7,000 of the agency's 57,000 employees – more than 10% of staff.[26] Media outlets report that these staff cuts and office closures have coincided with new Trump Administration antifraud policies that have caused more people to seek services at field offices.[27] For example, in light of changes to certain over-the-phone services, "the number of people visiting field offices to change their banking information . . . rose sharply compared with the previous year."[28] Field offices are reportedly overwhelmed.[29]

---

[21] Berzon, *supra* note 1 (reporting White House officials prevented SSA staff from releasing a statement to correct the misstatements by senior Trump Administration officials about the incidence of fraudulent phone calls to the SSA).

[22] *See* Legum, *supra* note 10.

[23] Hager, *supra* note 2.

[24] *Id.*

[25] Berzon, *supra* note 1 ("[H]igher traffic was poorly timed. At least three dozen field offices were estimated to be losing more than a quarter of their staff.").

[26] Wire, *supra* note 12.

[27] Berzon, *supra* note 1 ("Higher traffic was poorly timed. At least three dozen field offices were estimated to be losing more than a quarter of their staff.").

[28] *Id*.

[29] *Id.* (reporting "Lines at some locations snaked out the door.").



Obtaining communications of the listed officials regarding Cluster (E) will "reveal . . . meaningful information about government operations or activities not already known to the public," *id.* § 402.85(b)(2)(ii), because the Trump Administration has reportedly removed information and data that would allow the public to assess the impact of the Administration's personnel policies at the SSA. For example, media outlets report that the White House required former Acting Social Security Commissioner Leland Dudek to remove videos of weekly operational meeting from YouTube which "highlighted potential management problems," including "staff shortages" and office closures.[30] The White House also reportedly required Mr. Dudek to remove "a list of field offices that were losing 25 percent or more of their staff" that was previously published online.[31]

"The contribution to public understanding" of the listed officials' communications regarding Cluster (E) "would be significant, *id.* § 402.85(b)(2)(iii), because media outlets report that "[t]housands of worried and frustrated recipients have thronged local field offices, asking why the phone lines are jammed, whether their local offices will be closed by Elon Musk's team . . . and whether they will lose their benefits."[32] It furthers the public interest to shed light on the listed Administration officials' awareness and reactions to staffing shortages at the SSA that have negatively impacted the SSA's operations.

### III. Conclusion

Waiving fees associated with 2025-FOIA-02240 will further the "public interest." DFF asks that SSA grant a full waiver of any fees associated with FOIA request 2025-FOIA-02240.


/s/ Skye Perryman

Skye Perryman
President & CEO
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043

---

[30] *Id.*
[31] *Id.*
[32] Jack Healy et al., "*Just a Mess': Staff Cuts, Rushed Changes and Anxiety at Social Security*," The New York Times (April 8, 2025), https://www.nytimes.com/2025/04/08/us/social-security-trump.html.



August 6, 2025

**VIA Electronic Delivery**

Executive Director for the Office of Privacy and Disclosure
Social Security Administration
G-401 WHR
6401 Security Boulevard
Baltimore, MD 21235
FOIA.Public.Liaison@ssa.gov

**Re: Appeal of fee waiver denial, supplementary information, and status update for Freedom of Information Act Request #2025-FOIA-02240**

Dear FOIA Appeal Officer:

We write in response to Social Security Administration's ("SSA") recent denial of Democracy Forward Foundation's ("DFF") request for a fee waiver with respect to its July 2, 2025 Freedom of Information Act (FOIA) request for records of all communications of Department of Government Efficiency ("DOGE") affiliates and SSA political appointees containing certain key terms. The request sought:

> All electronic communications (including emails, email attachments, complete email chains, calendar invitations, or attachments thereto, as well as any text messages or messages sent on messaging platforms such as Slack, Microsoft Teams, WhatsApp, Signal, or GChat) **sent** by (A) any government official listed below <u>and</u> containing (B) any of the following key terms.

> > A. <u>Officials</u>:
> > > a. any present or former employee or affiliate of the "Department of Government Efficiency" ("DOGE") or the U.S. "DOGE" Service, including but not limited to Steve Davis, Antonio Gracias, Akash Bobba, Ethan Shaotran, Edward Coristine and Aram Moghaddassi;
> > > b. any present or former SSA political appointee, including but not limited to Leland Dudek, Frank Bisignano, Michael Russo, and Scott Coulter;

> > B. Key terms:
> > > a. Fraud



b. Delay
c. "Dead people"
d. DMF
e. "DHS data"
f. "Missed payments"
g. "Wait time"
h. "Overwhelmed"
i. "Field office"
j. "RIF"
k. "Identity verification"
l. "ID verification"
m. "Banking information"
n. "Bank information"
o. "Direct deposit"

This request seeks records from March 1, 2025 until the date of the search.

DFF has limited this request to communications sent by the relevant custodians to limit the number of responsive records and reduce the processing burden on the agency, however DFF still requests that the agency produce complete email chains, including the incoming messages to which a sent message is responding.

On July 29, 2025, SSA responded to DFF's request by denying the organization's request for a fee waiver. SSA's response stated that we "must be reasonably specific in [our] waiver request as to the specific Government operation or activity and provide direct, clear (not remote or attenuated) connections to the meaningful information [we] seek." SSA's response indicates that SSA believes that our requested information does not have a reasonably specific connection to a government operation. We respectfully disagree, both on the basis of the record originally before the agency and based on recent developments.

We submitted this request for records in light of widespread reports that anti-fraud operations led by DOGE and then Acting Commissioner Dudek at the SSA were resulting in service disruptions, slowdowns of retirement processing, waves of missed payments, and overwhelmed field offices. Internal documents revealed that the anti-fraud phone tool had "slowed retirement claim processing by 25% and led to a 'degradation of public service.'"[1] Relatedly, the agency reportedly was suffering from a backlog of 575,000 pending retirement claims by May.[2]

---

[1] Natalie Alms, "*DOGE went looking for phone fraud at SSA — and found almost none*," NextGov (May 15, 2025), https://www.nextgov.com/digital-government/2025/05/doge-went-looking-phone-fraud-ssa-and-found-almost-none/405346/

[2] Tami Luhby, "*Social Security drops controversial anti-fraud review amid growing claims backlog*," CNN (May 17, 2025), https://edition.cnn.com/2025/05/17/politics/social-security-anti-fraud-policy



Additionally, in early April, disabled Americans and low-income senior citizens were erroneously notified that they would no longer receive payments around the same time that these anti-fraud measures were rolled out.[3] These are only a few instances of a growing pattern of disruption to a vital service that 73 million individuals rely on.

The disclosure of communications of DOGE affiliates and SSA officials containing key terms regarding fraud and service disruption will enhance public understanding of the impacts behind these purported anti-fraud operations, as well as decisions to reduce the staffing available to carry out the agency's functions. These are not "remote or attenuated connections" given that the former acting head of SSA Leland Dudek, himself, spoke with the New York Times about the wide ranging impacts DOGE had on the agency's administration, including in instances of potential political retaliation and in anti-fraud efforts. That article is additional evidence that DFF's requests seek records that will shed light on significant and meaningful actions related to DOGE's impact on a critical government agency.

For these reasons, DFF's request for the records of communications of DOGE affiliates and SSA political appointees containing key terms regarding fraud and service disruptions are likely to contribute to significant and meaningful public understanding. We ask you consider this additional information in reconsidering the agency's fee waiver denial.

Additionally, we ask that SSA provide an update on its processing, including whether the agency has yet completed a search and when it will issue a final response.

*/s/ Skye Perryman*
Skye Perryman
President & CEO
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043

---

[3] Aimee Picchi, "*Social Security wrongly told disabled people and some seniors their benefits ended, causing alarm*," CBS News (April 8, 2025), https://www.cbsnews.com/news/social-security-doge-ssi-error-message-currently-not-receiving-payments/



# SOCIAL SECURITY

Refer to:
S9H: 2025-FOIA-02240

July 29, 2025

Ms. Skye Perryman and Mr. Aman George
Democracy Forward Foundation
PO Box 34553
Washington, DC  20043
foia@democracyforward.org

Dear Ms. Perryman and Mr. George:

I am responding to your request for a fee waiver concerning your July 2, 2025 Freedom of Information Act (FOIA) request to the Social Security Administration (SSA) for the following information from March 1, 2025 through the date of the search:

> All electronic communications (including emails, email attachments, complete email chains, calendar invitations, or attachments thereto, as well as any text messages or messages sent on messaging platforms such as Slack, Microsoft Teams, WhatsApp, Signal, or GChat) sent by (A) any government official listed below and containing (B) any of the following key terms.
>
> A. Officials:
>     a. any present or former employee or affiliate of the "Department of Government Efficiency" ("DOGE") or the U.S. "DOGE" Service, including but not limited to Steve Davis, Antonio Gracias, Akash Bobba, Ethan Shaotran, Edward Coristine and Aram Moghaddassi;
>
>     b. any present or former SSA political appointee, including but not limited to Leland Dudek, Frank Bisignano, Michael Russo, and Scott Coulter;
>
> B. Key terms:
>     a. Fraud,
>     b. Delay
>     c. "Dead people"
>     d. DMF
>     e. "DHS data"
>     f. "Missed payments"
>     g. "Wait time"
>     h. "Overwhelmed"
>     i. "Field office"
>     j. "RIF"
>     k. "Identity verification"
>     l. "ID verification"
>     m. "Banking information"
>     n. "Bank information"
>     o. "Direct deposit"

I reviewed your request for a fee waiver, and I have decided not to waive or reduce the fee.  We may waive or reduce the fee under our regulation at 20 C.F.R. § 402.85 if we find that waiver is

in the public interest.  We make this determination if we find that disclosure of the information meets both tests below:

- it is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government, and
- it is not primarily in the requester's commercial interest.

Our regulation (20 C.F.R. § 402.85(b)) lists factors we consider in analyzing whether disclosure is in the public interest.  These factors include:

- how the records pertain to the Federal government's operations or activities,
- whether disclosure would reveal any meaningful information about government operations or activities not already known to the public, and
- whether the contribution to public understanding would be significant.

In your fee waiver request, you allege that the above provisions are met because "the requested records pertain to the Federal government's operations and activities because they concern changes contemplated and made by the SSA to the administration of the Social Security program as well as the impact of those changes."  You also state that "the requested records will reveal meaningful information about government operations and/or activities not already known to the public because the rollout of these changes was mired in confusion and reports suggest the Trump Administration directed the SSA to undertake these changes in a purposefully nontransparent manner."  Your final argument for a fee waiver is that your organization intends to publicize records to contribute significantly to the public's understanding of how this Administration's policies are impacting the benefits that Social Security recipients have earned.

However, to be granted a fee waiver "you must be reasonably specific in your waiver request as to the specific Government operation or activity and provide direct, clear (not remote or attenuated) connections to the meaningful information you seek." 20 C.F.R. § 402.85(b)(2)(iv).  Further, as our regulation indicates, "[g]eneralized interest in government programs is not reasonably specific to grant waiver." *Id.* Your fee waiver request fails to explain with reasonable specificity how the disclosure of the information you requested will meet the above factors, and I have not otherwise found that release of the records requested would meet the abovementioned factors.

Accordingly, applying the standards listed above, I cannot waive the fee.

We are charging you fees for your request under section 1106(c) of the Social Security Act (Act) (42 U.S.C. § 1306(c)).  Because we have invoked section 1106(c), the FOIA fee provisions in 5 U.S.C. § 552 are not applicable to your request.  Section 1106(c) applies notwithstanding FOIA and provides that we charge the full cost for search and reproduction of records when the request is for a purpose not directly related to the administration of a program under the Act (20 C.F.R. § 402.80), *regardless* of the fee provisions in FOIA.  We determined that your request is not directly related to the administration of the Act.  Accordingly, we will charge you for the full cost to provide the requested information (42 U.S.C. § 1306(c); 20 C.F.R. § 402.80).

We will send further correspondence when we determine what fees, if any, apply to your request.

Please note that this response is limited to the determination on your fee waiver request; our office is still assessing your request as phrased and will provide subsequent correspondence on that determination.

If you have questions or would like further assistance with your request, you may contact our FOIA Public Liaison by email at FOIA.Public.Liaison@ssa.gov; by phone at 410-965-1727, by choosing Option 2; or facsimile at 833-795-0132.

You may also contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration for dispute resolution services. OGIS is an entity outside of SSA that offers mediation services to resolve disputes between FOIA requesters and Federal agencies. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road – OGIS, College Park, MD 20740-6001; email at ogis@nara.gov; telephone at 202-741-5770; toll-free at 1-877-684-6448; or facsimile at 202-741-5769.

If you disagree with this decision, you may file a written appeal with the Executive Director for the Office of Privacy and Disclosure, Social Security Administration, G-401 WHR, 6401 Security Boulevard, Baltimore, MD 21235. Your appeal must be postmarked or electronically transmitted to FOIA.Public.Liaison@ssa.gov within 90 days of the date of our response to your initial request. Please mark the envelope or subject line with "Freedom of Information Appeal."

Sincerely,

Jennifer Karangelen
Acting Freedom of Information Officer



July 2, 2025

**VIA ELECTRONIC DELIVERY**

Social Security Administration
Office of Privacy and Disclosure
G-401 WHR 6401 Security Boulevard
Baltimore, Maryland 21235
Via online portal

**Re: Freedom of Information Action Request**

Dear FOIA Officer:

Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552, Democracy Forward
Foundation submits this request for records.

*Records Requested*

Democracy Forward Foundation ("DFF") requests that the Social Security Administration
("SSA") produce the following within twenty (20) business days:

> All electronic communications (including emails, email attachments, complete email
> chains, calendar invitations, or attachments thereto, as well as any text messages or
> messages sent on messaging platforms such as Slack, Microsoft Teams, WhatsApp,
> Signal, or GChat) **sent** by (A) any government official listed below <u>and</u> containing (B)
> any of the following key terms.

> A. <u>Officials</u>:
>     a. any present or former employee or affiliate of the "Department of
>        Government Efficiency" ("DOGE") or the U.S. "DOGE" Service,
>        including but not limited to Steve Davis, Antonio Gracias, Akash
>        Bobba, Ethan Shaotran, Edward Coristine and Aram Moghaddassi;
>     b. any present or former SSA political appointee, including but not
>        limited to Leland Dudek, Frank Bisignano, Michael Russo, and
>        Scott Coulter;

> B. Key terms:
>     a. Fraud
>     b. Delay



      c.   "Dead people"
      d.   DMF
      e.   "DHS data"
      f.   "Missed payments"
      g.   "Wait time"
      h.   "Overwhelmed"
      i.   "Field office"
      j.   "RIF"
      k.   "Identity verification"
      l.   "ID verification"
      m.  "Banking information"
      n.   "Bank information"
      o.   "Direct deposit"

This request seeks records from March 1, 2025 until the date of the search.

DFF has limited this request to communications <u>sent</u> by the relevant custodians to limit the number of responsive records and reduce the processing burden on the agency, however DFF still requests that the agency produce complete email chains, including the incoming messages to which a sent message is responding.

***Scope of Search***

FOIA requires agencies to disclose information, with only limited exceptions. 5 U.S.C. § 552(a)(8)(A). In the event that any of the requested documents cannot be disclosed in their entirety, we request that you release any material that can be reasonably segregated. *See* 5 U.S.C. § 552(b). Should any documents or portions of documents be withheld, we further request that you state with specificity the description of the document to be withheld and the legal and factual grounds for withholding any documents or portions thereof in an index, as required by *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). Should any document include both disclosable and non-disclosable material that cannot reasonably be segregated, we request that you describe what proportion of the information in a document is non-disclosable and how that information is dispersed throughout the document. *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

If requested records are located in, or originated in, another agency, department, office, installation or bureau, please refer this request or any relevant portion of this request to the appropriate entity.

To the extent that the records are readily reproducible in an electronic format, we would prefer to receive the records in that format. However, if certain records are not available in that format, we are willing to accept the best available copy of each such record.



Please respond to this request in writing within 20 working days as required under 5 U.S.C. § 552(a)(6)(A)(i). If all of the requested documents are not available within that time period, we request that you provide us with all requested documents or portions of documents that are available within that time period.

***Request for Fee Waiver***

Pursuant to 42 U.S.C. § 1306 and your agency's regulations, DFF requests a waiver of all fees associated with processing records for this request. Your regulations provide for documents to be furnished to requesters at no fee or reduced fees when "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 20 C.F.R. § 402.85.

When assessing a request for a fee waiver, your agency considers the following factors: (i) how the records pertain to the Federal government's operations or activities; (ii) whether disclosure would reveal any meaningful information about government operations or activities not already known to the public; and (iii) whether the contribution to public understanding would be significant. *Id.* § 402.85(2). Considering these factors, DFF's request merits a fee waiver.

First, the requested records pertain to the Federal government's operations and activities because they concern changes contemplated and made by the SSA to the administration of the Social Security program as well as the impact of those changes. Second, the requested records will reveal meaningful information about government operations and/or activities not already known to the public because the rollout of these changes was mired in confusion[1] and reports suggest the Trump Administration directed the SSA to undertake these changes in a purposefully nontransparent manner.[2] Finally, the contribution of DFF's request to the public understanding of Social Security will be significant because Social Security is a program that

---

[1] *See, e.g.*, SSA, *Correcting the Record About Social Security Direct Deposit and Telephone Services* (Apr. 18, 2025), https://blog.ssa.gov/correcting-the-record-about-social-security-direct-deposit-and-telephone-services/.

[2] Alexandra Berzon et al., *The Bureaucrat and the Billionaire: Inside DOGE's Chaotic Takeover of Social Security*, The New York Times (June 16, 2025), https://www.nytimes.com/2025/06/16/us/politics/doge-social-security.html (reporting "White House officials ultimately demanded that [Acting Commissioner Dudek] halt many of [his] transparency initiatives").



currently benefits 73 million individuals[3] and agency data shows that, in light of the chaos emanating from the SSA, "more Americans have claimed their Social Security benefits earlier," "sacrificing higher payments down the road for financial certainty now."[4] DFF intends to publicize records DFF receives to contribute significantly to the public's understanding of how this Administration's policies are impacting the benefits that Social Security recipients have earned.

To this latter point, DFF has a demonstrated ability to disseminate information of public interest requested through FOIA. When DFF obtains materials through FOIA requests that are of significant public interest, DFF's communications staff regularly works to ensure that these materials and their contents are featured in press articles educating the public about the operation of government; many articles feature additional commentary and analysis from DFF staff about those materials and their relevance to policy issues of public interest. Indeed, records received by DFF have previously formed the basis of news reports.[5]

---

[3] *See* Molly Weston Williamson, *Cuts to the Social Security Administration Threaten Millions of Americans' Retirement and Disability Benefits*, Ctr. for Am. Progress (Mar. 12, 2025), https://www.americanprogress.org/article/cuts-to-the-social-security-administration-threaten-millions-of-americans-retirement-and-disability-benefits/.

[4] *Supra* note 4.

[5] *See*, *e.g.*, Alexander Nazaryan, *Why did right-wing troll Charles C. Johnson meet with Commerce Secretary Wilbur Ross?*, Yahoo News (May 14, 2019), https://news.yahoo.com/why-did-rightwing-troll-charles-c-johnson want-to-meet-with-commerce-secretary-wilbur-ross-090000636.html; Derek Kravitz and Jack Gillum, *"Happy to Do It": Emails Show Current FAA Chief Coordinated With Ex-Lobbyist Colleagues on Policy*, ProPublica (Mar. 27, 2019), https://www.propublica.org/article/dan-elwell-current-faa-chief-coordinated-with-ex-lobbyist-colleagues-on policy;
 Hamid Aleaziz, *Emails Show US Border Officials Didn't Receive "Zero Tolerance" Guidance Until After the Policy Was Enacted*, Buzzfeed News (Feb. 28, 2019), https://www.buzzfeednews.com/article/hamedaleaziz/zero tolerance-policy-guidance-dhs-family-separation; Jonathan Cohn and Jeffrey Young, *Emails Show Trump Administration Was Told Obamacare Ad Cuts Could Hurt Enrollment*, Huffpost (Dec. 17, 2018), https://www.huffingtonpost.com/entry/trump-verma-obamacare-advertising-cut_us_5c115061e4b084b082ff8dba;  Madison Pauly, *When the Biggest Prison Company Complained About a California Sanctuary Law, ICE Listened*, Mother Jones (Dec. 7, 2018), https://www.motherjones.com/politics/2018/12/geo-memo-private-prison-california immigration/; Eliza Rellman, *'Just answer the question and kill this story': In internal emails, Heather Nauert criticized Rex Tillerson's refusal to deny reports that he called Trump a 'moron,'* Business Insider (Nov. 2, 2018), https://www.businessinsider.com/heather-nauert-rex-tillerson-trump-moron-2018-11; Rebecca Klein, *Lawsuit Accuses Betsy DeVos And Her Deputies Of Being Motivated By Sexism*, HuffPost (Oct. 31, 2018),  https://m.huffpost.com/us/entry/us_5bd9ff6ee4b01abe6a1ad4a9;



Democracy Forward Foundation is not filing this request to further any commercial interest, and any information obtained by Democracy Forward Foundation as a result of this request and disclosed will be disclosed at no cost.

If the request for a waiver is denied, we are willing to pay all reasonable fees incurred for searching and duplicating records in responding to this request, up to $100. If the costs of responding to this request should exceed that amount, please contact us before incurring costs exceeding that amount.

*Conclusion*

If you need clarification as to the scope of the request, have any questions, or foresee any obstacles to releasing fully the requested records within 20 business days, please contact me as soon as possible at foia@democracyforward.org.

We appreciate your assistance and look forward to your prompt response.

---

Nick Penzenstadler, *A year after Vegas shooting, ATF emails reveal blame, alarm over bump stocks*, USA Today (Oct. 1, 2018), https://www.usatoday.com/story/news/2018/10/01/year-after-vegas-shooting-atf-emails-reveal-blame-alarm-over bump-stocks/1432137002/; Jessica Kwong, *Ivanka Trump was more than complicit in Obama equal pay rollback she had a hand in it, watchdog alleges*, Newsweek (Aug. 29, 2018), https://www.newsweek.com/ivanka-trump equal-pay-complicit-obama-1093833; Vera Bergengruen, *New Emails Show What Happens When The Pentagon Has To Scramble To Catch Up To Trump*, Buzzfeed News (July 25, 2018), https://www.buzzfeednews.com/article/verabergengruen/these-emails-show-what-happens-when-the-white-house keeps; Erin Dooley, *Exclusive: Former for-profit college executive shaped Education Department policy that could benefit former employers: Documents*, ABC News (May 15, 2017), https://abcnews.go.com/US/exclusive-profit college-executive-shaped-education-department-policy/story?id=55108981; Heidi Przybyla, *Notes, emails reveal Trump appointees' war to end HHS teen pregnancy program*, NBC News (Mar. 20, 2018), https://www.nbcnews.com/politics/politics-news/notes-emails-reveal-trump-appointees-war-end-d-hhs-teen pregnancy-n857686; Dominic Holden, *Documents Show The Trump Administration Approved Bump Stocks Before It Opposed Them*, Buzzfeed News (Mar. 22, 2018), https://www.buzzfeednews.com/article/dominicholden/trump administration-bump-stocks; Bernard Condon, *Trump Advisor Denies He Cheered End of Tunnel Funding Deal*, Associated Press (Feb. 13, 2018), *available at* https://www.usnews.com/news/business/articles/2018-02-13/trump adviser-denies-he-cheered-end-of-tunnel-funding-deal; Celeste Katz, *Interior Department tapped wildfire preparedness funds for Ryan Zinke helicopter tour*, Newsweek (Dec. 29, 2017), https://www.newsweek.com/ryan zinke-interior-department-helicopters-wildfires-757857.



Sincerely,

*/s/ Skye Perryman*

Skye Perryman
President & CEO
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043